45 P.3d 816

Anna L. DULANEY, Plaintiff–Appellant,

v.

ST. ALPHONSUS REGIONAL MEDICAL CENTER, Gary F. Holland, M.D., Stanley J. Waters, M.D., Defendants–Respondents,

and

Does I Through X, Defendants.

No. 26028.

Supreme Court of Idaho, Boise, March 2001 Term.

March 21, 2002.

Rehearing Denied May 2, 2002.

Ringert Clark, Chtd., Boise, and Magnuson Lowell, Richmond, Washington, for appellant. James G. Reid and Richard Lowell argued.

Cantrill, Skinner, Sullivan & King, Boise, for respondent St. Alphonsus Regional Medical Center. John L. King argued.

Hall, Farley, Oberrecht & Blanton, Boise, for respondent Stanley J. Waters. Richard E. Hall argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent Gary F. Holland. Patricia M. Olsson argued.

## SUBSTITUTE OPINION

## THE COURT'S PRIOR OPINION DATED AUGUST 7, 2001, IS HEREBY WITHDRAWN.

EISMANN, Justice.

Plaintiff Anna Dulaney appeals from the district court's grant of summary judgment dismissing her claims for medical malpractice against the defendants. Because she did not lay an adequate foundation for admitting into evidence the testimony of her two expert witnesses, we affirm the order of the district court.

## I. FACTS AND PROCEDURAL HISTORY

On August 17, 1994, Anna Dulaney, a resident of Washington state, was injured in a fall at her cousin's home in Boise, Idaho. The chair on which Delaney was seated rolled off a pool deck, causing her to fall approximately four feet to the ground. An ambulance transported her to the emergency room of the St. Alphonsus Regional Medical Center (St.Alphonsus), where she was treated and released to return to her cousin's home.

Two days later, while walking from her bed to the bathroom in her cousin's home, Dulaney's legs "gave out" and she fell again. Now in excruciating pain, Dulaney was transported by ambulance back to the St. Alphonsus emergency room where Dr. Holland, the emergency room physician, examined her and then asked Dr. Waters, an orthopedic surgeon, to consult on Dulaney's case. After both physicians had examined her and had reviewed the x-rays taken two days earlier, Dulaney was released from the emergency room. Her pain had not subsided and she was unable to walk. She was transported by ambulance back to her cousin's home.

On August 21, 1994, Dulaney was driven by automobile back to Washington and taken immediately to the emergency room at Overlake Medical Center in Bellevue, Washington. She was examined and admitted into the hospital. An MRI scan taken the next day revealed a block in her spine at T7. She was immediately taken to the operating room, but the surgery did not restore function in her lower extremities. She is now a paraplegic.

On February 7, 1997, Dulaney filed this action against St. Alphonsus and against doctors Gary Holland and Stanley Waters. On January 5, 1998, St. Alphonsus moved for summary judgment contending that its emergency room employees were not negligent and that St. Alphonsus was not liable for the alleged negligence of Drs. Holland and Waters, who were independent contractors. The district court granted summary judgment to St. Alphonsus on the issue of the negligence of its employees. Dulaney has not appealed that grant of summary judgment. The district court denied St. Alphonsus' motion for summary judgment regarding the negligence of the physicians on the ground that St. Alphonsus could not contract away liability for actions taken by physicians practicing in its emergency room.

On June 2, 1999, St. Alphonsus again moved for summary judgment, and on the following day Drs. Holland and Waters each moved for summary judgment. In its motion for summary judgment, St. Alphonsus asked

the district court to reconsider its prior ruling that the hospital could be liable for the actions of physicians who were independent contractors. In their motions for summary judgment, Drs. Holland and Waters argued that Dulaney had failed to lay an adequate foundation for the admissibility of the testimony of her two medical experts. They specifically argued that Dulaney had failed to show that her experts were familiar with the local standard of care. Dr. Waters also argued that there was no evidence that his alleged negligence proximately caused or contributed to Dulaney's injuries. Dr. Holland supported his motion with an affidavit of his medical expert who stated that Holland's treatment of Dulaney had met the applicable standard of care, and Dr. Waters supported his motion with his affidavit in which he stated that his treatment of Dulaney complied with the applicable standard of care. Dulaney relied upon affidavits and deposition testimony from two physicians who practiced in the state of Washington.

The district court heard the motions on July 19, 1999. It granted Dr. Holland's motion to strike portions of the affidavit of one of Dulaney's medical experts, and it ruled that the testimony of Dulaney's medical experts was not admissible. It therefore granted the defendants' motions for summary judgment.

On August 6, 1999, Dulaney filed a motion for reconsideration based upon additional deposition excerpts and a supplemental affidavit filed by one of her medical experts. In the supplemental affidavit, the medical expert stated that he had consulted with an unnamed professor of orthopedic medicine at a major university regarding the standard of care, that the professor told him that the standard of care in Boise for orthopedic surgeons was the same as in all major metropolitan areas in the United States, and that the professor had authorized the medical expert to reveal the professor's name to the judge presiding over the case as long as it was not revealed to anyone else. The district court denied the motion for reconsideration, and Dulaney filed this appeal.

## II. ISSUES ON APPEAL

A. Did the trial court err in striking a portion of the affidavit of Dr. Terry Mengert, one of Dulaney's medical experts, and in ruling that Dulaney had failed to lay an adequate foundation for the admission of Dr. Mengert's testimony?

B. Did the trial court err in ruling that Dulaney had failed to lay an adequate foundation for the admission of the testimony of her medical expert, Dr. William Stump?

C. Did the trial court err in denying the motion for reconsideration on the basis that Dr. Stump's conversation with an anonymous professor of orthopedics was not an acceptable means for laying the foundation that Dr. Stump had knowledge of the applicable standard of care?

## III. ANALYSIS

The admissibility of the expert testimony is an issue that is separate and distinct from whether that testimony is sufficient to raise genuine issues of material fact sufficient to preclude summary judgment. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 940 P.2d 1142 (1997); *Rhodehouse v. Stutts*, 125 Idaho 208, 868 P.2d 1224 (1994). When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party. *Mitchell v. Bingham Mem'l Hosp.*, 130 Idaho 420, 942 P.2d 544 (1997). The liberal construction and reasonable inferences standard does not apply, however, when deciding whether or not testimony offered in connection with a motion for summary judgment is admissible. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 940 P.2d 1142 (1997); *Rhodehouse v. Stutts*, 125 Idaho 208, 868 P.2d 1224 (1994). The trial court must look at the witness' affidavit or deposition testimony and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible. *Rhodehouse v. Stutts*, 125 Idaho 208, 868 P.2d 1224 (1994). This Court reviews challenges to the trial court's evidentiary rul-

ings under the abuse of discretion standard. *Perry v. Magic Valley Reg'l Med. Ctr.,* 134 Idaho 46, 995 P.2d 816 (2000).

■ To avoid summary judgment for the defense in a medical malpractice case, the plaintiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice. In order for such expert testimony to be admissible, the plaintiff must lay the foundation required by Idaho Code § 6–1013. To do so, the plaintiff must offer evidence showing: (a) that such opinion is actually held by the expert witness; (b) that the expert witness can testify to the opinion with a reasonable degree of medical certainty; (c) that the expert witness possesses professional knowledge and expertise; and (d) that the expert witness has actual knowledge of the applicable community standard of care to which his expert opinion testimony is addressed. *Morris ex rel. Morris v. Thomson,* 130 Idaho 138, 937 P.2d 1212 (1997); *Rhodehouse v. Stutts,* 125 Idaho 208, 868 P.2d 1224 (1994); *Dunlap ex rel. Dunlap v. Garner,* 127 Idaho 599, 903 P.2d 1296 (1994).

The applicable community standard of care is defined in Idaho Code § 6–1012. It is: (a) the standard of care for the class of health care provider to which the defendant belonged and was functioning, taking into account the defendant's training, experience, and fields of medical specialization, if any; *Kolln v. Saint Luke's Reg'l Med. Ctr.,* 130 Idaho 323, 940 P.2d 1142 (1997); *Evans v. Griswold,* 129 Idaho 902, 935 P.2d 165 (1997); (b) as such standard existed at the time of the defendant's alleged negligence; *Perry v. Magic Valley Reg'l Med. Ctr.,* 134 Idaho 46, 995 P.2d 816 (2000); *Watts v. Lynn,* 125 Idaho 341, 870 P.2d 1300 (1994); *Gubler v. Boe,* 120 Idaho 294, 815 P.2d 1034 (1991); and (c) as such standard existed at the place of the defendant's alleged negligence. *Perry v. Magic Valley Reg'l Med. Ctr.,* 134 Idaho 46, 995 P.2d 816 (2000); *Watts v. Lynn,* 125 Idaho 341, 870 P.2d 1300 (1994); *Gubler v. Boe,* 120 Idaho 294, 815 P.2d 1034 (1991).

■ Rule 56(e) of the Idaho Rules of Civil Procedure imposes additional requirements upon the admission of expert medical testimony submitted in connection with a motion for summary judgment. The party offering such evidence must show that it is based upon the witness' personal knowledge and that it sets forth facts as would be admissible in evidence. *Kolln v. Saint Luke's Reg'l Med. Ctr.,* 130 Idaho 323, 940 P.2d 1142 (1997); *Rhodehouse v. Stutts,* 125 Idaho 208, 868 P.2d 1224 (1994). The party offering the evidence must also affirmatively show that the witness is competent to testify about the matters stated in his testimony. *Kolln v. Saint Luke's Reg'l Med. Ctr.,* 130 Idaho 323, 940 P.2d 1142 (1997); *Rhodehouse v. Stutts,* 125 Idaho 208, 868 P.2d 1224 (1994). Statements that are conclusory or speculative do not satisfy either the requirement of admissibility or competency under Rule 56(e). *Kolln v. Saint Luke's Reg'l Med. Ctr.,* 130 Idaho 323, 940 P.2d 1142 (1997); *Hecla Mining Co. v. Star–Morning Mining Co.,* 122 Idaho 778, 839 P.2d 1192 (1992).

■ An expert testifying as to the standard of care in medical malpractice actions must show that he or she is familiar with the standard of care for the particular health care professional for the relevant community and time. *Perry v. Magic Valley Reg'l Med. Ctr.,* 134 Idaho 46, 995 P.2d 816 (2000); *Rhodehouse v. Stutts,* 125 Idaho 208, 868 P.2d 1224 (1994). The expert must also state how he or she became familiar with that standard of care. *Perry v. Magic Valley Reg'l Med. Ctr.,* 134 Idaho 46, 995 P.2d 816 (2000); *Rhodehouse v. Stutts,* 125 Idaho 208, 868 P.2d 1224 (1994). One method for an out-of-area expert to obtain knowledge of the local standard of care is by inquiring of a local specialist. *Perry v. Magic Valley Reg'l Med. Ctr.,* 134 Idaho 46, 995 P.2d 816 (2000). This is the method attempted by Dulaney's medical experts in this case.

**A. Did the trial court err in striking a portion of the affidavit of Dr. Terry Mengert, one of Dulaney's medical experts, and in ruling that Dulaney had failed to lay an adequate foundation for the admission of Dr. Mengert's testimony?**

■ Dr. Terry Mengert is a physician currently practicing emergency room medicine at the Emergency Department of the Univer-

sity of Washington in Seattle, Washington. Dulaney retained him as an expert witness in this case, and his testimony was primarily directed towards the conduct of Dr. Holland, the emergency room physician who treated Dulaney. In opposing the motions for summary judgment, Dulaney relied upon both the deposition testimony of Dr. Mengert and his affidavit. Dr. Holland objected to a portion of the affidavit, and the district court sustained that objection. In order to put that ruling in context, it is necessary to first examine Dr. Mengert's deposition testimony.

Counsel for the defendants deposed Dr. Mengert on April 21, 1999. During that deposition, Dr. Mengert testified that he had telephoned a Dr. Scott Smith to learn the local standard of care for emergency room physicians in Boise. His testimony regarding that telephone call was as follows:

Q. Now, you said you made a call about three days ago?

A. Yes.

Q. What prompted that?

A. The attorneys here recommended that my testimony would not be admissible unless I had confirmed that the practice patterns as pertained to the Anna Dulaney case with respect to emergency care were not different in Boise as compared to here.

Q. Were you given a name to call?

A. No. This is a physician that I know personally.

Q. Who is that?

A. It's Dr. Scott Smith. Dr. Smith is affiliated with the University of Washington. He's at the Seattle Veterans—he's at the Boise Veterans Administration Hospital. I know Dr. Smith because I worked in the medicine clinic with Dr. Smith at this institution in the 1980s. Dr. Smith has been in Boise since the early part of the '90s.

Q. What specialty, if any, does Dr. Smith practice?

A. Dr. Smith is like me, boarded in both Emergency Medicine and Internal Medicine. But his current practice is Internal Medicine at the Boise Veterans Hospital.

Q. Do you know, has he continuously practiced in the Internal Medicine area at the Boise VA Hospital?

A. To my knowledge, yes.

Q. Do you know, has he ever practiced anywhere else in Boise?

A. I do not know. I don't think so, but I'm not positive.

Q. You don't have any affirmative knowledge that he's ever practiced anywhere besides the VA in Boise?

A. That's correct.

Q. So to the best of your knowledge, Dr. Smith has practiced Internal Medicine at the Boise VA, and that's the extent of his Boise practice?

A. Yes.

. . . .

Q. Can you tell me everything you can remember, please, about the conversation?

A. Sure. I explained to Scott that I was giving expert testimony with respect to a medical malpractice case; that the case occurred the initial care of the patient occurred in Boise, Idaho at St. Alphonsus Hospital in 1994, and that I needed to establish that my criticisms of the case were pertinent in the Boise environment as they are pertinent if the case had occurred here in Seattle.

Q. Okay.

A. And I briefly reviewed with Dr. Smith what had happened to the patient. . . .

I asked Dr. Smith, in his opinion as a practicing Boise physician, was that within the standard of care in that environment. And he said no. He subsequently said the patient should not have been discharged from the Emergency Department if she couldn't walk. And that was the extent of the conversation.

Q. Was there any other discussion that you had with Dr. Smith concerning practice patterns that you haven't already related?

A. Not that I recall.

. . . .

Q. You're not an orthopedic surgeon, correct?

A. I'm not.

Q. You've not had training as an orthopedic surgeon?

A. No.

Q. And you would agree that you don't have the same experience and training in evaluating a patient from an orthopedic standpoint, as would an orthopedic surgeon?

A. Correct. Over the point of view by method of training and practice is going to be slightly different.

In response to the motions for summary judgment, Dulaney offered the affidavit of Dr. Mengert in which he stated:

That in my phone conversation with Dr. Scott Smith on or about April 18, 1999, Dr. Smith confirmed that there were no deviations between the standard of care applicable to emergency room physicians in Boise, Idaho on August 19, 1994, treating a patient with Anna Dulaney's symptoms and complaints, and the standard of care applicable to emergency room physicians practicing in Seattle, Washington treating similar patients on that date.

Dr. Holland objected to the above-quoted paragraph of the affidavit on the grounds that it either contradicted his deposition testimony or was conclusory. The district court sustained the objection on the ground that the statements in the above-quoted paragraph were conclusory. It then sustained the objection to Dr. Mengert's deposition testimony on the ground that Dulaney had failed to lay an adequate foundation showing that Dr. Mengert had familiarized himself with the local standard of care for an emergency room physician. The district court stated, "Dr. Mengert consulted with Dr. Smith, an internist at a Boise hospital, at the VA hospital. There was no evidence that Dr. Smith was himself familiar with the local standard of care for ER physicians practicing in Boise at the relevant time."

The district court did not err in striking the above-quoted portion of Dr. Mengert's affidavit. It is conclusory and does not contain any specific facts showing that Dr. Smith had knowledge of the standard of care for emergency room physicians in Boise, Idaho, on August 19, 1994. Likewise, the district court did not err in ruling that Dulaney had failed to lay an adequate foundation for the admission of Dr. Mengert's deposition testimony.

The applicable community standard of care is defined in Idaho Code § 6-1012 to be the standard of care for the class of health care provider to which the defendant belonged and was functioning, taking into account the defendant's training, experience, and fields of medical specialization, if any. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 940 P.2d 1142 (1997); *Evans v. Griswold*, 129 Idaho 902, 935 P.2d 165 (1997). At the time of the alleged negligence, Dr. Holland was functioning as an emergency room physician, a recognized field of medical specialization. As shown by the above-quoted portions of Dr. Mengert's deposition testimony, he telephoned Dr. Smith in an attempt to learn the local standard of care for emergency room physicians in Boise on August 19, 1994. There are no facts showing, however, that Dr. Smith had knowledge of the standard of care for emergency room physicians in Boise. Dr. Mengert testified that as far as he knew, Dr. Smith only practiced internal medicine while he has been in Boise. There is no evidence that he has ever practiced emergency medicine while in Boise. The fact that Dr. Smith is board certified in emergency medicine is not sufficient to show that he is familiar with the local standard of care for that specialty. This Court long ago held that board certification in the same specialty as the defendant physician is not, by itself, sufficient to show knowledge of the local standard of care for physicians practicing in that specialty. *Strode v. Lenzi*, 116 Idaho 214, 775 P.2d 106 (1989). The expert must, at a minimum, determine whether the local community standard varies from the national standard for that board certified specialty. *Id.* It may certainly be possible that while practicing internal medicine in Boise, Dr. Smith became familiar with the local standard of care for emergency room physicians. There are no facts in the record so showing, however. Likewise, it may be that with respect to the care at issue in this case, the local standard for a physician practicing internal medicine is the same as that for a physician practicing

emergency room medicine. Again, however, there are no facts in the record so showing. Therefore, the district court correctly held that Dulaney had failed to lay an adequate foundation showing that Dr. Mengert had actual knowledge of the applicable standard of care for emergency room physicians.[1]

**B. Did the trial court err in ruling that Dulaney had failed to lay an adequate foundation for the admission of the testimony of her medical expert Dr. William Stump?**

█ The other medical expert upon whom Dulaney relied was Dr. William Stump, a board-certified neurologist practicing in the state of Washington. In an attempt to learn the applicable standard of care, he telephoned Dr. Bruce Adornato, a neurologist with whom Dr. Stump had trained at the National Institutes of Health. When Dr. Stump telephoned him, Dr. Adornato was practicing neurology in Palo Alto, California, but Dr. Stump testified that Dr. Adornato had previously practiced neurology in Boise, Idaho, during the period from the late 1980s to sometime in the early to mid–1990s. Dr. Stump testified regarding his conversation with Dr. Adornato as follows:

Q. Can you tell me generally what your conversation with Dr. Adornato was? As best you can tell us, tell us what you discussed with him.

A. About the medical standard of care in Idaho.

Q. Specifically what?

A. Specifically, the question whether there was anything that was not standard; whether he thought the standard of care was different from the general medical care that he and I may be practicing, et cetera.

Q. Can you remember with any specificity what he said, other than what you just said?

A. He said in his opinion the standard of care in Idaho, and Boise specifically, was similar to what he and I would be currently practicing on. He expressed an

opinion that with the broad spread of medical knowledge and the availability of, basically, national meetings, that he felt that it would be unlikely that there would be any variations in medical care standards.

Q. Did you talk with any specificity as to dates, what years you're talking about, in terms of the standards of care similarities?

A. When he was in Boise.

Q. Did you talk with any specificity as to types of doctors?

A. We discussed general medical care.

Q. Nothing more specific than that?

A. Not that I remember.

. . . .

Q. Now, do you know what the routine was, or the standard was, in Boise, Idaho in 1994 for an orthopedic surgeon asked to evaluate a patient for low-back pain?

A. I have not talked with an orthopedic surgeon. I talked to a neurologist.

Q. So you would agree you don't know the standard for an orthopedic surgeon?

A. I have the statement from the neurologist concerning orthopedic assessment in Boise. I do not know an orthopod that practiced in Boise. I've not discussed what a typical orthopod would look at.

Q. And in fact, you indicated earlier, you talked about the standard in Boise, the medical standards, of neurology. Did you specifically mention to him orthopedic surgery?

A. I talked to him about general medical care in Boise.

Q. So you didn't ask him specifically about orthopedic surgeons?

A. I do not remember asking him specifically about orthopedic surgeons.

The district court sustained the objection to Dr. Stump's deposition testimony on the ground that Dulaney had failed to lay an adequate foundation showing that Dr. Stump had familiarized himself with the local standard of care for either emergency room physicians or orthopedic surgeons. The district

---

1. For the same reasons, Dulaney did not show that Dr. Mengert had actual knowledge of the

local standard of care for orthopedic surgeons.

court did not err in holding that Dulaney had failed to lay an adequate foundation for Dr. Stump's expert testimony.

As stated above, Idaho Code § 6–1012 defines the applicable community standard of care to be the standard of care for the class of health care provider to which the defendant belonged and was functioning, taking into account the defendant's training, experience, and fields of medical specialization, if any. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 940 P.2d 1142 (1997); *Evans v. Griswold*, 129 Idaho 902, 935 P.2d 165 (1997). At the time of the alleged negligence, Dr. Holland was functioning as an emergency room physician and Dr. Waters was functioning as an orthopedic surgeon, both of which are recognized fields of medical specialization. As shown by the above-quoted portions of Dr. Stump's deposition testimony, he telephoned Dr. Adornato, a neurologist, in an attempt to learn the local standard of care for emergency room physicians and orthopedic surgeons in Boise on August 19, 1994. There are no facts showing, however, that Dr. Adornato had knowledge of the standard of care for those medical specialties. We cannot assume that by practicing neurology in Boise, Dr. Adornato would have become familiar with the standard of care for emergency room physicians and orthopedic surgeons. In fact, Dr. Adornato's statements indicated that he did not actually know the local standard of care for these two medical specialties, but he thought it would be unlikely that there would be any variations from the standard practiced in other parts of the country. It may be that with respect to the care at issue in this case, the local standard for a neurologist is the same as that for an emergency room physician or orthopedic surgeon. Again, however, there are no facts in the record so showing. Therefore, the district court correctly held that Dulaney had failed to lay an adequate foundation showing that Dr. Stump had actual knowledge of the applicable standard of care for emergency room physicians or orthopedic surgeons. Because of this holding, we do not address the issue of whether Dr. Adornato's knowledge of the local standard of care would have complied with the rele-

vant time requirement of Idaho Code § 6–1012.

Relying upon *Clarke v. Prenger*, 114 Idaho 766, 760 P.2d 1182 (1988), Dulaney argues, "The Idaho courts do not require that expert witness doctors be of the same medical specialty as the Defendant physician in offering testimony against the defendant." Although Dulaney correctly argues that the medical expert does not have to practice in the same specialty as the defendant health care provider, the expert must still have knowledge of the applicable standard of care. As the Court in *Clarke* stated:

> Recognizing the complexity of knowledge required in the various medical specialties, more than a casual familiarity with the specialty of the defendant's physician is required. The witness must demonstrate a knowledge acquired from experience or study of the standards of the specialty of the defendant physician sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards, and not to the standards of the witness's particular specialty if it differs from that of the defendant.

114 Idaho at 769, 760 P.2d at 1185 (quoting from *Fitzmaurice v. Flynn*, 167 Conn. 609, 356 A.2d 887 (1975)). Although Dr. Stump was not disqualified from testifying as to the care provided by Drs. Holland and Waters simply because Dr. Stump is a neurologist and they are not, for his testimony to be admissible Dulaney was required to show that Dr. Stump had adequately familiarized himself with the standards and practices of emergency room physicians and/or orthopedic surgeons in Boise as they existed in August 1994. Dr. Stump was likewise not precluded from relying upon another neurologist to familiarize himself with the applicable standard of care, as long as that neurologist was shown to have adequate knowledge of the standards and practices of emergency room physicians and/or orthopedic surgeons in Boise as they existed in August 1994. Dulaney failed to make any such showing.

**C. Did the trial court err in denying the motion for reconsideration on the basis that Dr. Stump's conversation with an**

anonymous professor of orthopedics was not an acceptable means for laying the foundation that Dr. Stump had knowledge of the applicable standard of care?

After the district court granted summary judgment for the defendants, Dulaney moved for reconsideration. She supported that motion with a supplemental affidavit of Dr. Stump in which he stated that he had acquired additional information about the standard of care in Boise by consulting with an unnamed professor of orthopedics at an unnamed major university. In his affidavit, Dr. Stump stated as follows:

3. I spent approximately 20 minutes on the telephone consulting with a qualified orthopedic physician that is familiar with the standard of care in Boise, both now and in 1994. This doctor is a full professor of orthopedic medicine at a major university. He has trained orthopedic physicians that presently practice in Boise, as well as in other locales around the country. This doctor has maintained personal and professional relationships with physicians in Boise, and in other locations around the country. He has continued to teach and lecture throughout the country, and in Boise.

4. This physician has advised that the standard of orthopedic care is the same in Boise as it is in all major metropolitan areas in the United States. Boise physicians are of equal training and caliber as they are elsewhere in this country. Based upon our discussion, he advised (and I determined and confirmed my understanding) that the standard of care in Washington in 1994 was the same as the standard of care in Idaho at the same time.

Even assuming that the use of an anonymous informant is an acceptable manner for adequately familiarizing an out-of-area physician of the local standard of care, Dr. Stump's affidavit does not allege specific facts showing that the anonymous professor was familiar with the standard of care for orthopedic surgeons in Boise in August 1994. The professor stated that he had trained orthopedic physicians "that presently practice in Boise," but he did not state whether they were practicing in Boise in 1994. He stated that he has "maintained personal and professional relationships with physicians in Boise," but he did not state whether he did so during 1994. He likewise did not state that he had ever discussed with these orthopedic physicians the standard of care for an orthopedic physician practicing in Boise in 1994. He stated that he had taught and lectured in Boise, but did not state when he did so. Dr. Stump's affidavit does not allege any specific facts showing that the anonymous professor was familiar with the standard of care for orthopedic surgeons in Boise in August 1994. The professor's conclusory statement that he was familiar with the standard of care in Boise in 1994 is simply not sufficient. *Strode v. Lenzi*, 116 Idaho 214, 775 P.2d 106 (1989). The district court correctly held that the supplemental affidavit of Dr. Stump was not sufficient to show that he had adequately familiarized himself with the standards and practices of orthopedic surgeons in Boise, Idaho, in August 1994.

## IV. CONCLUSION

The district court correctly held that Dulaney had failed to lay an adequate foundation showing that her out-of-state medical experts had adequately familiarized themselves with the standard of care for either emergency room physicians or orthopedic surgeons in Boise, Idaho, as it existed in August 1994. Therefore, we affirm the district court's grant of summary judgment dismissing this action. Costs are awarded to the defendants.

Chief Justice TROUT and Justice WALTERS concur.

Justice KIDWELL, dissenting.

Anna Dulaney should have been allowed her day in the Idaho court system. A reasonable interpretation of the applicable statutes would allow the case to go forward. The district court and now the majority opinion of this Court have utilized an overly strict and parochial methodology to deter and bar a serious possible malpractice situation from being litigated. Therefore, I dissent.

The district court erred when it ruled that Drs. Mengert and Stump had not adequately familiarized themselves with the local stan-

dard of care pursuant to I.C. §§ 6–1012, – 1013. The requirements of those statutes are not intended to be overly burdensome for the plaintiff to meet. Further, the statutory language does not mandate the district court's decision in this case.

### A. Dr. Mengert

This Court, as well as the Court of Appeals, has addressed the constraints placed on the plaintiff's expert, noting that the requirements are not intended to be onerous. *Frank v. East Shoshone Hosp.*, 114 Idaho 480, 482, 757 P.2d 1199, 1201 (1988) (noting, "Our decision today does not cast an onerous burden on plaintiffs in medical malpractice actions. It is not an overly burdensome requirement to have an expert become familiar with the standard of care in the community where alleged malpractice is committed"); *Keyser v. Garner*, 129 Idaho 112, 117, 922 P.2d 409, 414 (Ct.App.1996). This Court's interpretation of the requirements created by I.C. §§ 6–1012, –1013 was further elaborated in *Clarke v. Prenger*, 114 Idaho 766, 760 P.2d 1182 (1988). In *Clarke*, this Court explained:

We take this occasion to express our disapproval of what appears to be a growing practice among the trial courts of this state dismissing medical malpractice cases at the summary judgment point on the basis that plaintiffs' expert witnesses are not sufficiently familiar with the standard of care to be expected from defendant-physicians.... We do not view such burden as being onerous on plaintiffs in medical malpractice cases since ordinarily it only requires a positive indication that plaintiffs' expert witnesses possess the requisite knowledge of the local standard of care which has been allegedly violated. Unfortunately, plaintiffs' counsel too often are either unaware of the requirements of the summary judgment process, or fail to take their responsibilities seriously. On the other hand, it appears that some of our trial judges fail to recognize their obligation to construe not only the evidence before the court, but all reasonable inferences that flow therefrom, most favorably to the non-moving party.

*Id.* at 768, 760 P.2d at 1184.

This Court has also addressed whether or not the plaintiff's expert must be of the same specialty as the defendant physician. This Court in *Clarke* expressly rejected this contention:

Recognizing the complexity of knowledge required in the various medical specialties, more than a casual familiarity with the specialty of the defendant's physician is required. The witness must demonstrate a knowledge acquired from experience or study of the standards of the specialty of the defendant physician sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards, and not to the standards of the witness's particular specialty if it differs from that of the defendant. It is the scope of the witness's knowledge and not the artificial classification by title that should govern the threshold question of admissibility. Of the decisions in other jurisdictions which have discussed this issue, this appears to be the decided majority view.

*Id.* at 769, 760 P.2d at 1185 (quoting *Fitzmaurice v. Flynn*, 167 Conn. 609, 356 A.2d 887 (1975)).

In this case, Dr. Mengert testified in his deposition that he was board certified in both Internal Medicine and Emergency Medicine. Dr. Mengert practiced as a full-time attending physician in the Emergency Department at the University of Washington. Dr. Mengert testified that in order to gain familiarity with the local standard of care, he first contacted a physician in Boise. This physician refused to cooperate because of the "small community" in Boise.

Next, Dr. Mengert contacted a personal acquaintance, Dr. Scott Smith, who practices at the Boise Veterans Administration Hospital. Although Dr. Smith is board certified in both Emergency Medicine and Internal Medicine, his current practice is in Internal Medicine. According to Dr. Mengert, he described the symptoms that Dulaney suffered and the treatment Dulaney received at SARMC. He then asked Dr. Smith if, in his opinion as a practicing Boise physician, the treatment Dulaney received was within the standard of care in that environment. Dr.

Smith gave his opinion that she should not have been discharged from the Emergency Department if she could not walk.

Dr. Mengert stated that in his opinion, the complaints related to this case "are applicable to any Emergency Department within the United States of America. Though I don't have practice knowledge from those other environments, I think what took place was outside the standard of care of modern Emergency Medicine practice." Dr. Mengert testified that in his opinion to a reasonable degree of medical certainty, Dr. Holland breached the standard of care applicable to him as an emergency room physician practicing in Boise in August of 1994 with respect to his care of Dulaney.

The district court found Dr. Mengert's testimony to be inadmissible because:

[H]e failed to adequately familiarize himself with the standards and practices of emergency room physicians in Boise in August of 1994. Dr. Mengert consulted with Dr. Smith, an internist at a Boise hospital, at the VA hospital. There was no evidence that Dr. Smith was himself familiar with the local standard of care for ER physicians practicing in Boise at the relevant time. Dr. Smith is a board certified ER physician, at least he was in April of 1999 when he gave his deposition. There is no evidence in the record that Dr. Smith was a practicing emergency room physician, nor a board certified emergency room physician in August of 1994.

The standard to be applied in this Court's review of a grant of summary judgment compels this Court to construe all facts liberally in favor of the nonmoving party. This, together with our examination of I.C. §§ 6–1012, –1013, in the recent case of *Grover v. Smith*, 37 Idaho 247, 46 P.3d 1105 (2002) does not mandate the conclusion reached by this Court.

In this case, Dr. Mengert contacted a physician, Dr. Smith, who shared the same board certification, Emergency Medicine, as the defendant doctor. This indicates that Dr. Smith was "a similarly trained and qualified provider of the same class in the same community," with similar training and field of medical specialization as required by statute.

Neither I.C. § 6–1012, nor case law, requires that the local physician practice in the same field.

Additionally, this Court has recognized at least since 1988 that experts do not need to share the exact same specialty as that of the defendant physician. As noted by the *Clarke* court, "[t]he witness must demonstrate a knowledge acquired from experience or study of the standards of the specialty of the defendant physician sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards." Dr. Smith's board certification in Emergency Medicine indicates that his training rises to the level of training contemplated in *Clarke*.

The record does not contain any evidence that the local standards applicable to a physician practicing in emergency room medicine would differ significantly from the standards applicable to a physician practicing in internal medicine. This is especially true in this case, where emergency measures were not taken in regard to the treatment of Dulaney. Consequently, Dr. Mengert's affidavit should have been considered as to the standard of care pertaining to emergency room physicians, such as Dr. Holland, in Boise in 1994.

Further, Dr. Mengert's affidavit was also sufficient to help establish the standard of care applicable to Dr. Waters, an orthopedic physician called in to consult in the emergency room. Although Dr. Waters is an orthopedic physician, the standard of care for emergency room practice became relevant when he, after being appraised of the emergency, rendered professional services in the emergency room setting. Therefore, Dr. Mengert's testimony should have been considered as to the standard of care applicable to Dr. Waters.

This Court noted in *Clarke* that the applicable statutes were not intended to be overly burdensome. I would find the affidavit of Dr. Mengert admissible and sufficient to create genuine issues of material fact as to whether Dr. Holland and Dr. Waters breached the local standard of care.

## B. Dr. Stump

This Court has not addressed previously the issue of whether an expert must consult a local physician who practiced in the community *during the exact date of the alleged negligence,* to survive a motion for summary judgment. At a glance, the case of *Gubler v. Boe,* 120 Idaho 294, 815 P.2d 1034 (1991), appears to address this issue. In that case, this Court examined an appeal from a medical malpractice case invoking the provisions of I.C. § 6–1012. *Id.* at 296, 815 P.2d at 1036. During trial, the district court considered the testimony of Dr. Tune, an expert witness who claimed that he had familiarized himself with the local standard of care in existence in Pocatello, Idaho, at the time of the alleged negligence of the defendant. *Id.* at 295, 815 P.2d at 1035. The district court found that the expert failed to meet the time and place requirements of I.C. § 6–1012. *Id.* The court pointed to the fact that the expert consulted an Idaho Falls physician, as opposed to a Pocatello physician, and that the standard discussed was that in existence in 1988, as opposed to that in 1983, the time of the alleged negligence. *Id.* In reaching its decision, the district court indicated that a local physician who consults with an out-of-state expert must establish that the information provided about the local standard pertains specifically to the time period in which the alleged negligence occurred. *Id.*

However, an in-depth examination of *Gubler* reveals that this Court did not reach the time specificity issue on appeal. Rather, in *Gubler,* the relevant issues on appeal concerned whether the district court erred in denying the Gubler's motion for a continuance and whether the combined testimony of Dr. Tune and Dr. Boe, the defendant physician, sufficed to familiarize the expert with the local standard of care. *Id.* at 296, 815 P.2d at 1036. The language discussing the time specificity requirement found in *Gubler* pertains only to the district court's interpretation of the requirements of I.C. § 6–1012. *Id.* Consequently, the time specificity issue remains unaddressed by this Court.

In this case, Dr. Stump, a board-certified neurologist, testified in his deposition that he consulted with Dr. Adornato about the medical standards of health care in Boise, Idaho. Dr. Adornato, also a neurologist, practiced in Boise "in the late '80's, early '90's." Dr. Adornato, who has since moved to California, told Dr. Stump that "based on the broad spread of medical knowledge and the availability of, basically, national meetings, that he felt it would be unlikely that there would be any variations in the medical care standards." Dr. Stump testified that he and Dr. Adornato specifically discussed the similarities in the standards of care pertaining to the time period in which Dr. Adornato practiced in Boise. Dr. Stump also indicated that he had read the depositions provided by Dr. Holland and Dr. Waters.

The district court found that Dr. Stump failed to adequately familiarize himself with the local standard of care. The court noted:

> With respect to Dr. Stump's opinion regarding Dr. Holland's care, Dr. Stump failed to adequately familiarize himself with the standard of care applicable to—well both to [an] emergency room doctor, certainly to an emergency room doctor in Boise in August of 1994, where all he did was speak to a fellow neurologist, Dr. Adornato.

> Dr. Adornato himself was not an emergency room doctor nor was he practicing in Boise in August of—in fact, in any medicine in Boise in August of 1994.

> With respect to Dr. Waters, I find the same fatal flaw, essentially Dr. Stump did not adequately familiarize himself with the standard of care applicable to an orthopedic surgeon in Boise in August of 1994, where the only consultation he had was with Dr. Adornato, again a neurologist who is not practicing orthopedic surgery or any other type of medicine in Boise at the relevant time.

I would find that Dr. Stump's testimony and affidavit should have been considered. While it is true that Dr. Adornato was not practicing in Boise in 1994, there is no evidence or suggestion in the record that the standard of care changed in the two-year time period ranging from 1992–1994. For purposes of summary judgment, an inference exists that the standard of care did not

change during the relatively brief time period.

In addition, it is relevant that the record is void of evidence to suggest that a neurologist has different training and experience than an emergency room physician or an Internal Medicine doctor. This becomes particularly relevant when the testimony of the neurologist pertains to neurological tests performed by an orthopedist. This Court has noted that an expert does not need to share the same specialty as the defendant doctor; rather this is one factor to consider when determining if the expert's testimony satisfies I.C. §§ 6–1012, –1013.

Further, in *Hoene v. Barnes,* 121 Idaho 752, 828 P.2d 315 (1992), this Court noted that I.C. §§ 6–1012, –1013 should not be utilized to shield physicians from suit in malpractice cases. *Id.* at 756, 828 P.2d at 319. This Court observed, "[t]here is no indication in I.C. §§ 6–1012 and 6–1013 that the legislature intended to grant this immunity from suit. . . ." *Id.*

The record indicates that Dr. Stump contacted numerous physicians to familiarize himself with the local standard of care. According to the affidavit of Lawrence Duff, letters were sent to twenty-two orthopedic physicians licensed in Idaho. Telephone calls were made to other out-of-state orthopedic physicians licensed in Idaho, however none of the physicians contacted were practicing in Idaho in 1994. Physicians are reluctant to testify against their fellow local physicians. Consequently, too rigidly enforcing the requirements set forth in the code provisions could serve to make it impossible for out-of-state experts to familiarize themselves with the local standard of care. This could ultimately preclude plaintiffs, such as Anna Dulaney, from bringing medical malpractice claims against Boise physicians under any set of facts.

For the above-stated reasons, I would hold that the district court erred in finding that Dr. Stump's affidavit was inadmissible.

## CONCLUSION

Viewing the facts and inferences in a light most favorable to Dulaney, the nonmoving party, the affidavits of Dr. Mengert and Dr. Stump should have been admitted. They were familiar with the local standard of care, and their affidavits created a genuine issue of material fact sufficient to survive summary judgment. This case should have been allowed to proceed, thus giving Anna Dulaney her day in court.

Justice SCHROEDER concurs.