IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 42093-2014

| JAMES HILLIARD and BARBARA HILLIARD, | ) | Boise, May 2015 Term |
| | ) | |
| Plaintiffs/Appellants, | ) | 2015 Opinion No. 48 |
| | ) | |
| v. | ) | Filed: May 21, 2015 |
| | ) | |
| MURPHY LAND COMPANY, LLC, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, in and for Owyhee County. Hon. Molly J. Huskey, District Judge.

The judgment of the district court is affirmed.

M. Karl Shurtliff, Boise, argued for appellants.

Steven F. Schossberger, Hawley Troxell Ennis & Hawley LLP, Boise, argued for respondent.

---

EISMANN, Justice.

This is an appeal out of Owyhee County from a judgment that the purchaser of real property was entitled to $3,000,000 held in trust pursuant to the real estate contract to pay damages resulting from the delay in obtaining possession of the real property purchased. The district court granted summary judgment to the purchaser after holding that the material portions of the affidavits filed by the vendors in opposition to summary judgment were inadmissible. We affirm the judgment of the district court and award attorney fees on appeal.

**I.**
**Factual Background.**

James and Barbara Hilliard (Vendors) owned a farm in Owyhee County named Crystal Springs Farm, consisting of almost 4,000 acres, although only approximately 3,000 acres of the land were farmable. For many years, they executed written leases of the best farm ground to various farmers who grew row crops, such as potatoes and sugar beets, and they orally leased to John W. Clark the other portions of the farm, on which he raised hay and grain crops.

In 2009 and 2010, Vendors leased the row crop portion of the farm to Lance Funk Farms, LLC. Because of his health, John W. Clark became unable to continue farming, and Vendors orally leased to his son Jay P. Clark, Vendors' attorney,[1] those parts of the farm not leased for growing row crops.

According to Vendors, in January 2010 Jay P. Clark fraudulently obtained a written document purporting to give him a one-year lease of the entire farm with an option to extend the lease for a period of ten years. He then recorded the document in the records of the county recorder, and in June 2010 his father recorded a document claiming to have a 10% interest in the farm. These recordings created clouds on the Vendors' title to the farm.

In November 2010, Vendors contracted to sell their farm to Murphy Land Company, LLC (Purchaser), for the sum of $9,500,000. Jay Clark told Purchaser that he would only vacate the farm upon payment to him of $2,000,000 and payment to his father of $950,000. Because of the two clouds on the title and the refusal of Jay Clark to vacate the property, the parties entered into an amendment to their contract which stated, among other things, that $3,000,000 of the sale price would be held in trust to "be available to the extent determined by a court of competent jurisdiction of the purchaser's damage, if any, for loss or delay of possession of real estate purchased herein." The sale closed on December 30, 2010.

On February 16, 2011, Vendors sued Jay Clark and John Clark, and on March 23, 2012, they obtained a judgment declaring Jay Clark's purported lease null and void and ordering that John Clark's recorded claim to ownership of a 10% interest in the farm be expunged from the county records. On February 17, 2011, Purchaser filed a lawsuit to have Jay Clark removed from the farm. Mr. Clark fought that lawsuit, including filing for bankruptcy protection after Purchaser was granted summary judgment in its action to remove him from the farm. As a result, Purchaser did not obtain possession of the farm until May 2, 2012.

---

[1] On July 30, 2012, Jay Clark was suspended from the practice of law, and he is still suspended.

On July 13, 2013, Vendors filed this action for a declaratory judgment that they were entitled to the $3,000,000 being held in trust. Purchaser filed a counterclaim seeking that sum for the damages it incurred due to the delay in being able to obtain possession of the farm.

On November 15, 2013, Purchaser filed a motion for summary judgment on its counterclaim. It supported the motion with a 182-page affidavit of Frank Tiegs, a member, co-manager, and 50% owner of Purchaser. The affidavit set forth Mr. Tiegs's expertise in farming and business; his opinions as to the damages incurred; and his explanation, with copies of supporting documents, as to how he arrived at his opinion. In his opinion, the damages suffered by Purchaser because of the delay in obtaining possession of the farm exceeded $3,000,000.

In response to the motion for summary judgment, Vendors filed four affidavits on November 29, 2013, which were the affidavits of Robert F. Bennett, James Hilliard, Ken Edmunds, and Jay Clark. Mr. Bennett was the realtor whom Vendors retained to sell their farm, and he expressed his opinion regarding the amendment to the contract. Mr. Hilliard set forth a chronology of what occurred in the real estate transaction and his understanding of the amendment to the real estate contract. Mr. Edmunds and Mr. Clark challenged some of the opinions in Mr. Tiegs's affidavit.

On December 5, 2013, Purchaser filed a written objection to specified paragraphs in the affidavits of Messrs. Bennett, Edmunds, Hilliard and Clark, stating the specific grounds for such objections. Purchaser also objected to the affidavits of Messrs. Bennett and Clark on the ground that they had not been timely disclosed as experts pursuant to the pretrial order. Purchaser's motion for summary judgment was heard on December 13, 2013. The district court granted Vendors' objections to the affidavits. As a result, there was no genuine issue of material fact as to the damages set forth in Mr. Tiegs's affidavit. On December 19, 2013, the court entered a judgment awarding Purchaser the $3,000,000 being held in trust. On January 2, 2014, Vendors filed a motion to alter or amend the judgment, which the district court denied after a hearing. Vendors then timely appealed.

## II.
### Did the District Court Err in Striking All or Portions of Mr. Edmunds's Affidavit?

Affidavits supporting and opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall

3

show affirmatively that the affiant is competent to testify to the matters stated therein." I.R.C.P. 56(e). Eight days before the hearing on Purchaser's motion for summary judgment, it filed a motion to strike and objections to affidavits filed by Vendors. At the hearing, Vendors' counsel contended that the motion and objections were untimely because they had not been filed at least fourteen days before the hearing. He was admittedly unaware of our case law stating that no motion is necessary to object to the admissibility of affidavits filed in connection with a summary judgment motion and that such objections can be made at the hearing. *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 15, 175 P.3d 172, 177 (2007); *Hecla Mining Co. v. Star-Morning Mining. Co*., 122 Idaho 778, 782-83, 839 P.2d 1192, 1196-97 (1992).

Mr. Edmunds stated in his affidavit that he had been retained as an expert by Vendors, but he did not identify or provide any information concerning his area of expertise or qualifications to express an expert opinion. Attached to his affidavit was his two-page "summary analysis" of Mr. Tiegs's affidavit. The district court struck the affidavit of Mr. Edmunds on the ground that Vendors had failed to comply with the scheduling order requiring that Vendors' experts, together with their opinions and reports, be disclosed by October 11, 2013. Alternatively, the court then addressed each objection to the various statements in Mr. Edmunds's affidavit and struck the material paragraphs in his "summary analysis" on various grounds, primarily that they lacked foundation or were hearsay.

On appeal, Vendors contend that the district court abused its discretion in striking Mr. Edmunds's affidavit for failing to comply with the pretrial order. On September 5, 2013, the district court issued an order requiring that within fourteen days the parties submit a stipulation to several deadlines, including "[t]he last day for plaintiff to disclose expert witnesses, together with their opinions and reports." The order provided that if the parties could not reach a stipulation, "[t]he plaintiff's counsel shall file a motion for entry of scheduling order." The order continued by stating that "if the parties are unable to reach an agreement and the court enters the scheduling dates, the parties agree to be bound by the scheduling dates and failure to comply with the scheduling dates may result in the imposition of sanctions." Vendors' counsel did not participate in discussing a stipulation with Purchaser's counsel and did not file a motion asking the court to enter a scheduling order. As a result, the district court entered a scheduling order on October 11, 2013, stating that "[t]he last day for Plaintiff to disclose expert witnesses, together with their opinions and reports (October 11, 2013)." Vendors' counsel did not object to the

4

deadline in that order and did not comply with it. However, we need not address that issue[2] because the district court ruled alternatively that the stricken statements in Mr. Edmunds's summary analysis were inadmissible, primarily because they lacked foundation or were hearsay.

The Vendors' only challenge on appeal to the district court's evidentiary rulings regarding the admissibility of statements in Mr. Edmunds's "summary analysis" is a passing reference in their opening brief that the district court "clearly looked at 'foundational issues.' " Rule 705 of the Idaho Rules of Evidence provides that an "expert may testify in terms of opinion or inference and give the reasons therefor without prior disclosure of the underlying facts or data . . . if requested pursuant to the rules of discovery the underlying facts or data were disclosed." Purchaser served interrogatories upon Vendors which requested, among other things, that Vendors identify each person they may call as an expert at trial, the subject matter on which the expert is expected to testify, the substance of the expert's opinions, the underlying facts and data upon which that opinion is based, and the documents upon which the expert may rely. On October 2, 2013, Vendors responded to the interrogatory by stating, "Not yet decided," and Vendors did not thereafter supplement that response. Therefore, because they had not disclosed during discovery the underlying facts and data upon which Mr. Edmonds's opinions were based, the district court did not err in requiring that they provide that information in his affidavit.

"Where a lower court makes a ruling based on two alternative grounds and only one of those grounds is challenged on appeal, the appellate court must affirm on the uncontested basis." *State v. Grazian*, 144 Idaho 510, 517-18, 164 P.3d 790, 797-98 (2007). Vendors do not present argument or authority challenging any of the evidentiary rulings made by the district court regarding the admissibility of the statements in Mr. Edmunds's two-page summary analysis. Therefore, we affirm the decision of the district court striking those portions of his summary analysis, which were all of the material statements in his summary analysis. The parts of the summary analysis that were not stricken do not create a genuine issue of material fact as to the damages set forth in Mr. Tiegs's affidavit.

## III.
## Did the District Court Err in Striking Various Portions of Mr. Clark's Affidavit?

---

[2] Our decision that there is no need to address the issue should not be construed as expressing any opinion regarding it.

Vendors submitted Mr. Clark's four-page affidavit in which he disputed some of Mr. Tiegs's opinions regarding the amount of Purchaser's damages caused by Mr. Clark wrongfully refusing to surrender possession of the farm. The district court held that it would not consider Mr. Clark's affidavit as being that of an expert because he was not timely disclosed as an expert witness. However, the court held that it would consider the affidavit as being that of a lay person. It then began addressing Purchaser's objections to various statements in the affidavit. Vendors challenge three statements made by the district court during analysis of the evidentiary objections to statements in Mr. Clark's affidavit.

In the first challenged statement, the district court stated that it compared Mr. Clark's affidavit submitted in opposition to Purchaser's motion for summary judgment with an earlier affidavit of his and found them to be conflicting. In his affidavit presented in opposition to summary judgment, Mr. Clark stated:

> Most importantly, it should be noted that in both 2011 and 2012 I was ready, willing and able to allow Mr. Tiegs, Mr. Funk, Murphy Land Company and Owyhee Farming Co. to lease any of the fields on the farm if they had paid a rent to do so. They could have farmed what they wanted, when they wanted. All they had to do was ask.

Vendors apparently presented this testimony to show that Purchaser could have mitigated its damages by leasing its own property from Mr. Clark. As the district court stated, Vendors did not produce any authority for the proposition that a landowner must pay rent to someone wrongfully in possession of the landowner's property in order to mitigate the damages caused by the wrongdoer. In commenting on Mr. Clark's statement, the district court stated:

> [T]here has been testimony rendered by Mr. Clark, pursuant to those affidavits. And the Court is entitled to view that testimony in the fashion that it has been given. The Court finds that there is simply conflicting testimony about Mr. Clark's willingness to allow these individuals on the land, and that is evidenced as—as indicated in the affidavit.
>
> It is also evidenced and indicated by all of the parties to this, who all acknowledge that he would not remove himself from the property until ordered by the Court in May 2012, which evidences an unwillingness to work with the parties, as requested by both the Hilliards and Murphy. . . . .
>
> But the Court is allowed to assess credibility, and the Court simply finds that based on those two affidavits, as to that very narrow factual issue, the Court did not find Mr. Clark to be credible about his willingness to allow other individuals to enter the farm and/or to take possession of the farm to engage in farming that—the purpose for which the farm was purchased.

6

Because neither party requested a jury trial, this action would have been tried to the district court. Even when an action will be tried to the court rather than to a jury, the court cannot assess credibility at the summary judgment stage when credibility can be tested in court during the trial. *Beus v. Beus*, 151 Idaho 235, 240, 254 P.3d 1231, 1236 (2011). However, the district court stated that it was weighing Mr. Clark's credibility on the "very narrow factual issue" of his willingness to permit Purchaser to take possession of the farm. The parties agree that Mr. Clark did not allow Purchaser to take possession of the farm until May 2, 2012, when he was evicted by the sheriff. In Mr. Hilliard's affidavit, he stated:

> (16) As of mid-December, 2010 I learned that Jay P. Clark refused to relinquish possession of the farm, so I requested my attorney, John Ward, to take legal steps to get him removed. Mr. Ward caused Jay P. Clark to be served with a Notice to Quit pursuant to Idaho Code §6-303. Jay P. Clark ignored the Notice to Quit and continued in possession.
> . . . .
> (27) On may [sic] 2, 2012 the Owyhee County Sheriff evicted Jay P. Clark form [sic] Crystal Springs Farm thereby providing Buyer, Murphy Land Company, LLC full, unrestricted possession of that farm.

During oral argument, Vendors admitted that Purchaser did not obtain possession of the farm until May 2, 2012, when the sheriff evicted Mr. Clark. Thus, even though the district court erred in judging the credibility of Mr. Clark regarding his willingness to vacate the farm, it is undisputed that he did not do so until he was evicted by the sheriff on May 2, 2012. "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." I.R.C.P. 61. Because this alleged error did not affect the substantial rights of any party, we will disregard it.

In the second and third challenged statements, the district court initially stated that it would not permit Mr. Clark to testify about facts he learned while in wrongful possession of the property. The court stated:

> THE COURT: Now, the Court is going to note specifically that any farming that occurred on 2011, 2012, the Court is not going to allow Mr. Clark to rely on that. It has been determined that he was wrongfully in possession of that property during that time frame. In fact, that he is now going to use his wrongful possession as a basis to defeat the motions, the Court is not going to permit.
> . . . .
> MR. SHURTLIFF: . . . And Mr. Clark knew the facts that predicate [paragraph 6]B [of Mr. Clark's affidavit].

7

THE COURT: Yes, but the reason that he knew the facts that predicated B is that he was unwilling to vacate the property, despite being told to do so.

Mr. Shurtliff responded to the court's comment by stating: "Your Honor, that makes him a bad person. That doesn't make him a bad witness." After further argument by Mr. Shurtliff, the court acknowledged that "you do raise some legitimate points." The court then addressed the admissibility of the statements in the paragraph at issue and struck some words and phrases as being irrelevant or not based upon personal knowledge. Vendors have not presented argument or authority on appeal asserting that these evidentiary rulings were erroneous. Therefore, the court's initial error did not affect Vendors' substantial rights and will be disregarded. I.R.C.P. 61.

The district court went through the remainder of Mr. Clark's affidavit and struck most of the remainder on the grounds that the statements were not based upon personal knowledge, lacked foundation, were hearsay, or were conclusory. Vendors do not challenge on appeal any of those evidentiary rulings. Therefore, they have failed to show any error that affected their substantial rights.

## IV.
## Did the District Court Fail to Construe the Facts in Favor of the Nonmoving Party?

When deciding a motion for summary judgment, "[a]ll disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Telford v. Smith County, Texas*, 155 Idaho 497, 500-01, 314 P.3d 179, 182-83 (2013). However, the admissibility of evidence is an issue separate and distinct from whether evidence is sufficient to raise a genuine issue of material fact sufficient to preclude summary judgment. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002). The liberal construction and reasonable inferences standard does not apply when deciding whether evidence offered in connection with a motion for summary judgment is admissible. *Id.*

Most of the testimony offered to refute Mr. Tiegs's affidavit was stricken as being inadmissible. Vendors do not argue on appeal that the remaining testimony would be sufficient to create a genuine issue of material fact sufficient to preclude summary judgment. The district court did not err by failing to construe liberally the admissible evidence in favor of Vendors.

8

Vendors have not shown that they presented any admissible evidence that was material to the motion for summary judgment.

## V.
### Did the District Court Err in Failing to Make Factual Findings Regarding the Inferences it Drew from the Evidence?

As a general rule, a trial court does not make findings of fact when deciding a motion for summary judgment because it cannot weigh credibility, must liberally construe the facts in favor of the non-moving party, and must draw all reasonable inferences from the facts in favor of the non-moving party. *Beus*, 151 Idaho at 238, 254 P.3d at 1234. Because this case was to be tried to the district court rather than to a jury, the court was entitled to determine the most reasonable inferences from the undisputed facts and was not required to draw all reasonable inferences in favor of the non-moving party. *Id*. When the trial court does so, it is making factual findings and must comply with Rule 52(a). Vendors contend on appeal that the district court in this case failed to do so. In support of that contention, Vendors cite the following statement by the district court:

> In this case, the Hilliards were on notice, and they agreed that they would be liable for any damages. Now, it is unfortunate that perhaps they didn't read this more carefully. It is perhaps unfortunate that the language is as broad as it is. But the Hilliards' failure to determine the common meaning of the word damages does not mean they are then not liable for the enforcement of that clause under the contract.

In the above-quoted comments, the district court was not drawing inferences from the undisputed facts. It was simply stating the law, that a party cannot avoid the plain language of a written contract on the ground that the party failed to read it or to understand its terms. *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 308, 160 P.3d 743, 747 (2007).

## VI.
### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Vendors request an award of attorney fees on appeal pursuant to the parties' real estate contract and Idaho Code sections 12-120 and 12-121. Because they are not the prevailing party on appeal, they are not entitled to an award of attorney fees.

9

Purchaser requests an award of attorney fees on appeal pursuant to Idaho Code sections 12-120(3) and 12-121. Section 12-120(3) provides that in an action to recover in a commercial transaction, the prevailing party is entitled to an award of attorney fees. *Advanced Med. Diagnostics, LLC v. Imaging Ctr. of Idaho*, LLC, 154 Idaho 812, 816, 303 P.3d 171, 175 (2013). This is an action to recover in a commercial transaction, and therefore Purchaser, as the prevailing party on appeal, is entitled to an award of attorney fees on appeal.

**VII.**
**Conclusion.**

We affirm the judgment of the district court, and we award respondent costs and attorney fees on appeal.

Chief Justice BURDICK, Justice W. JONES and Justice Pro Tem KIDWELL **CONCUR.**

J. JONES, Justice, specially concurring.

I fully concur in the Court's opinion but feel compelled to make some brief comments. A lot was at stake in this case for the Hilliards. It was obvious from the start that competent expert testimony would be necessary in order to address the issue of damages—the amount of losses that Murphy Land Company sustained by reason of the delay in getting possession of the real property. The affidavit of Ken Edmunds, the Hilliards' purported expert, failed to establish his qualifications to opine, was without foundation, and was otherwise inadequate. Jay Clark certainly had more of a basis to be knowledgeable on the issue but, as the Court points out, infirmities in his affidavit made it ineffective to create a factual question on the issue of damages. Although I make no claim to be an expert of any sort on the economics of potatoes or other crops, I did manage to learn a bit from my father, Henry Jones, who was as good a potato grower as has ever tilled the soil of southern Idaho. The loss claimed by Murphy Land Company, exceeding $3 million, certainly appears to be excessive. Had the Hilliards' case been adequately presented in district court and upon appeal, they may have come out substantially better. Unfortunately, the courts can only act upon the evidence competently presented and are not in a position to rescue litigants from cases that are inadequately prepared and conducted.

10