## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 37384

| | | |
|---|---|---|
| DALLAS BEUS and DOUG BEUS, | ) | |
| | ) | **Boise, June 2011 Term** |
| Plaintiffs-Respondents, | ) | |
| | ) | **2011 Opinion No. 74** |
| v. | ) | |
| | ) | **Filed: June 29, 2011** |
| JERRY BEUS, | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| Defendant-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN C. SOUZA, Trustee of the Lynn G. | ) | |
| Beus Trust, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, in and for Bannock County. The Hon. David C. Nye, District Judge.

The judgment of the district court is <u>affirmed</u> in part and <u>vacated</u> in part.

Stephen C. Smith, Hawley Troxell Ennis & Hawley LLP, Boise, for appellant.

Randall C. Budge, Racine, Olson, Nye, Budge & Bailey Chartered, Pocatello, for respondents.

---

EISMANN, Chief Justice.

This action involves the rights of three brothers who were residuary beneficiaries under a testamentary trust. One of the brothers had been leasing the trust property when the trust terminated. After the other two brothers sued him and the trustee to determine their respective rights, the trustee terminated the lease. The one brother appeals the district court's ruling that the lease was properly terminated, that the brother was not entitled to compensation for improvements he had made to the leased property, and that his loans secured by the trust property are to be paid from his one-third share of the proceeds once the property is sold.

# I.

## Factual Background

Lynn Beus (Decedent) died on January 5, 1986. By his will, he left his wife (Widow) certain real and personal property, and he bequeathed the remainder of his property to a trustee in trust for the purpose of providing regular income to Widow until her death. The primary asset subject to the trust was a farm consisting of approximately 2521 acres of farmland and grazing land. The will provided that upon the death of Widow, the trust was to terminate, and the remaining assets subject to the trust were to be distributed equally among his three sons, Jerry, Dallas, and Doug. In addition, if they could not agree upon the operation, management, and division of the real property, the trustee was to sell the property and divide the proceeds equally among the sons, after payment of all expenses, taxes, and liens against the property. On May 14, 1987, the trustee and the personal representative of Decedent's estate, who were the same person, entered into a "Trust Agreement," which was approved by Widow. That trustee later died, and his son was the successor trustee. At some time prior to 2002, John C. Souza became the trustee (Trustee).

Prior to Decedent's death, Jerry had been leasing the farm ground. He continued to do so after Decedent's death, signing a farm lease in 1986, an addendum to that lease in 1994, and a farm lease in 2007.

Jerry and Trustee had executed the last lease on January 1, 2007, and it provided for a lease term from that date through December 31, 2014. Jerry was to pay as rent the sum of $12,000 annually to Widow and the taxes on the leased property. The lease also provided that Jerry was to be compensated for any improvements he made to the property, that the lease was subject to the terms of Decedent's will and the Trust Agreement, and that Trustee "shall have the right to terminate said lease or to renegotiate the terms at the end of the year."

In 2007, Jerry sought a loan from his bank to pay off two loans he had secured in 2002 and to obtain additional operating funds, but the bank would not loan additional money without having the farm as security. He sought approval from Dallas and Doug to use the farm as collateral for the loan, but they refused to consent. Jerry then contacted Trustee, who on May 2, 2007, executed a promissory note in the sum of $427,500 and a mortgage on the farm as security for payment of that note. The proceeds of the loan were used to pay settlement charges totaling

2

$77,204.50, which included prepaid interest; the balances totaling $332,141.66 that were owing on Jerry's two prior loans; and the sum of $18,153.84 to Jerry.

Widow died on June 10, 2008. In 2009, Jerry subleased the farmland to a third party for $60,000 per year. The sons could not agree on what should be done with the farm, and on May 6, 2009, Dallas and Doug filed this action against Jerry and Trustee seeking: (a) damages against and removal of Trustee for breach of his fiduciary duties; (b) a declaratory judgment that the 2007 farm lease is void and/or had been terminated; and (c) a declaratory judgment that Jerry is not entitled to reimbursement from the trust property for any improvements he had made to the property or any of his loans and that the 2007 loan was Jerry's sole responsibility and was to be paid from his share of any trust distribution.

On September 3, 2009, Dallas and Doug moved for partial summary judgment seeking a determination that: (a) the trust terminated upon Widow's death on June 10, 2008; (b) the 2007 farm lease terminated upon Widow's death or will terminate upon the sale of the trust property; (c) the sums owing under the 2007 loan are the sole obligation of Jerry and are to be paid out of his share of the trust estate; (d) Jerry is not entitled to reimbursement for any improvements he made to the farm; (e) the trust property should be sold by the trustee at a price agreed to by the sons or the court; and (f) Trustee should be removed as trustee and an independent trustee appointed in his place. On September 13, 2009, Trustee gave Jerry notice that the 2007 farm lease was being terminated effective December 31, 2009.

After the motion for partial summary judgment was briefed and argued, the district court issued its decision holding: (a) that the trust terminated upon Widow's death on June 10, 2008; (b) that Trustee had the right to terminate the 2007 farm lease at the end of each calendar year and that he terminated the lease effective December 31, 2009; (c) that Jerry is not entitled to compensation for any improvements to the farm because he failed to show that he made any after 2007; and (d) that the 2007 loan is the sole obligation of Jerry and that such loan would be paid from his share of the proceeds from the sale of the trust property.

On January 27, 2010, the district court entered a partial judgment that was certified as final pursuant to Rule 54(b) of the Idaho Rules of Civil Procedure. Jerry then timely appealed.

3

## II.

## Did the District Court Err in Holding that Trustee Had the Right to
## Terminate the 2007 Farm Lease at the End of 2009?

In their third cause of action, Dallas and Doug sought a declaratory judgment that the 2007 farm lease had terminated. After they had filed their motion for summary judgment, Trustee gave notice to Jerry that the lease would terminate on December 31, 2009. The lease included a provision giving the Trustee the right to terminate the lease at the end of the year. The district court held that the provision granted Trustee the right to terminate the lease at the end of each calendar year during the term of the lease, and Jerry contends that it only granted the right to terminate the lease at the end of the first year. Jerry argues on appeal that this provision is ambiguous, that the meaning of the provision is therefore an issue of fact, and that such factual issue cannot be resolved on summary judgment because all reasonable inferences from the evidence must be drawn in his favor.

"Summary judgment can only be granted when there are no genuine issues of material fact." *J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 613, 167 P.3d 748, 750 (2006). Ordinarily, "[a]ll disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Harrison v. Binnion*, 147 Idaho 645, 650, 214 P.3d 631, 636 (2009). However, "[w]hen an action will be tried before the court without a jury, the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *Shawver v. Huckleberrry Estates, L.L.C.*, 140 Idaho 354, 360-61, 93 P.3d 685, 691-92 (2004). "The test for reviewing the inferences drawn by the trial court is whether the record reasonably supports the inferences." *Id*. In this case, none of the parties had requested a jury trial, and therefore the district court was the trier of fact. *Farmers Nat'l Bank v. Shirey*, 126 Idaho 63, 71, 878 P.2d 762, 770 (1994); I.R.C.P. 38(d).

The provision at issue states, "IT IS UNDERSTOOD AND AGREED between the parties that the Lessor shall have the right to terminate said lease or to renegotiate the terms at the end of the year." Trustee testified in his deposition that he simply copied that provision from the 1986 farm lease. He did not testify as to any conversations regarding the provision. Jerry testified in his deposition that he understood the provision to mean that the Trustee was only

granted the power to terminate the lease at the end of 2007, the first year of the lease term. Jerry contends that his testimony created a genuine issue of material fact as to the interpretation of the provision, precluding the granting of summary judgment.

Jerry's "subjective intent or belief does not create a genuine issue of material fact." *J.R. Simplot Co.*, 144 Idaho at 614, 167 P.3d at 751. The determination of the parties' intent with respect to a contract provision "is to be determined by looking at the contract as a whole, the language used in the document, the circumstances under which it was made, the objective and purpose of the particular provision, and any construction placed upon it by the contracting parties as shown by their conduct or dealings." *Id.* at 613, 167 P.3d at 750. "A party's subjective, undisclosed intent is immaterial to the interpretation of a contract." *Id.*

The lease provides that it "is subject to the terms of the Last Will and Testament left by Lynn Beus and subject to the terms of the Trust established by Lynn Beus for and on behalf of his wife, Beth Beus." The will provides that if the sons were unable to agree upon the operation, management, or division of the real property upon Widow's death, "my Trustee is instructed to sell the same and to divide the proceeds equally between Dallas, Jerry and Doug after all expenses, taxes and liens of any kind and nature against the Trust property is paid."

The provision at issue states that Trustee can terminate the lease "at the end of *the* year" (emphasis added), not "at the end of *this* year." The term of the 1986 farm lease ran for eight crop years from March 1, 1986, through December 31, 1993. The 1994 addendum extended the lease for an additional seven crop years from March 1, 1994, through March 1, 2001. The term of the 2007 farm lease ran for eight crop years, from January 1, 2007, through December 31, 2014. Because the trust terminated upon the death of Widow, the trustee and Jerry could not predict when the trust would terminate at the time they executed the leases. If, when the trust terminated, there was a substantial period remaining on the lease term, the sale price of the property subject to the trust would be reduced, to the detriment of Dallas and Doug. Conversely, permitting Trustee to terminate the lease at the end of the calendar year in which the trust terminates would permit Jerry to finish the crop year, alleviating hardship that may occur if the lease terminated when the trust terminated. Considering the lease as a whole, the language used, and the circumstances under which it was made, the district court's interpretation of the provision is reasonable. It did not err in holding that Trustee could terminate the lease at the end of 2009.

## III.

### Did the District Court Err in Holding that Jerry Was Not Entitled
### to Compensation for Improvements?

The 2007 farm lease included the following provision: "IT IS UNDERSTOOD AND AGREED that the Lessee shall be compensated for any and all improvements he makes to said leased premises. Said compensation shall be paid to the Lessee herein at the time said improvements are made and completed, as set forth in the terms of the trust."[1] In their fourth cause of action, Dallas and Doug sought a declaratory judgment that Jerry was not entitled to compensation for any improvements because he had not made or documented any claim for improvements under this lease provision.

During his deposition, Jerry was asked what improvements he had made since January 1, 2007. He answered that he had installed a new main line to irrigate about thirty acres of additional land. He stated that he purchased the pipe and installed it and that he should have supporting records.

In their motion for summary judgment on this issue, Dallas and Doug asserted that they were entitled to summary judgment because "Defendant Jerry Beus has never produced any documentation claiming reimbursement for improvements to the Trust Property pursuant to the 2007 Lease Agreement." In response, Jerry argued, "In 2008, Jerry installed a new main line to expand the irrigated acres on the property," and he cited to his deposition testimony.

The district court granted summary judgment to Dallas and Doug on this issue on the ground that "it was undisputed at the hearing on October 19 that Jerry has failed to show that he has improved the property after 2007." The hearing referred to was the oral argument on the motion for partial summary judgment. During that hearing, Jerry's attorney did not mention any improvements allegedly made by Jerry while the 2007 farm lease was in effect. Although the party opposing summary judgment must bring to the trial court's attention evidence that may create a genuine issue of material fact, *Esser Electric v. Lost River Ballistics Technologies, Inc.*, 145 Idaho 912, 919, 188 P.3d 854, 861 (2008), the party is not required to do so orally, but can do so in the memorandum opposing the motion for summary judgment, as Jerry did in this case.

---

[1] The parties have not addressed whether the compensation is the cost of the improvements or the amount by which they increase the property's fair market value.

The lease provision states, "Said compensation shall be paid to the Lessee herein at the time said improvements are made and completed, as set forth in the terms of the trust." There is no trust instrument setting forth how the compensation is to be paid, or requiring that there be any documentation supporting the claim for compensation. Although the lack of supporting documentation may put Jerry's credibility at issue, it is not proper to assess credibility at the summary judgment stage when credibility can be tested in court before the trier of fact. *Stanley v. Lennox Indus., Inc.*, 140 Idaho 785, 789, 102 P.3d 1104, 1108 (2004). Therefore, we vacate paragraph 8 of the partial judgment stating, "Defendant Jerry Beus is not entitled to any reimbursement from the Trust for any improvements or any other expenses." This case must be remanded to determine whether Jerry installed the main line during the term of the 2007 farm lease, and, if so, the compensation to which he is entitled for doing so.

## IV.

### Did the District Court Err in Holding that the 2007 Loan Was the Sole Obligation of Jerry and that It Was to be Paid from His Share of the Trust Property?

In about 1978, Jerry began leasing Decedent's farm under a share crop arrangement. In 1986, after Decedent's death, Jerry executed the 1986 farm lease providing for cash rent because Widow did not want her income dependent upon crop yields and market prices.

Decedent cosigned Jerry's loan for the first year, but thereafter Jerry obtained his own financing. He first obtained financing from First Bank and Trust, and, when it went out of business, he obtained financing from Security State Bank. When that bank went out of business, he obtained financing from Ireland Bank, receiving his first loan in 1999. Jerry was unable to pay off his loans each year. He testified in his deposition that the amount of debt he was carrying was increasing year after year after year. In 2002, Jerry obtained two loans from Ireland Bank. One was in the amount of $372,740 to pay off four prior notes, and the other was in the amount of $235,000 for operating money. Jerry had previously given the bank security interests in his equipment, livestock, and crops, but the bank would not make the 2002 loans without additional security. Therefore, Trustee granted the bank a mortgage in the trust real property for each loan. The bank did not make any loans to Jerry after 2002 due to his payment history.

By 2007, the bank wanted its loans paid. Jerry asked Dallas and Doug if they would agree to mortgaging the trust property in order to obtain a new loan to pay off the prior loans.

They refused to agree, so Jerry contacted a lender who agreed to loan enough money to pay off Ireland Bank. Jerry then gave Trustee that information, and Trustee obtained the loan in the sum of $427,500 and granted the lender a mortgage in the trust property. The loan transaction closed on May 2, 2007. The proceeds of that loan were disbursed as follows: $332,141.66 to Ireland Bank to pay off the loans Jerry had obtained in 2002; $77,204.50 to pay settlement charges, which included a loan origination fee of $21,375 and prepaid interest of $52,500; and $18,153.84 to Jerry. The interest rate on the loan was 14% per annum.

In 2008, Jerry subleased the farm ground to his son, and in 2009, he subleased it to a third party for $60,000 per year, payable at the rate of $5,000 per month. He used those lease payments to make the monthly payments due on the 2007 loan.

In arguing to the district court that the 2007 loan must be paid from the proceeds of the sale of the real property before dividing any remaining sum among the three sons, Jerry relied solely upon the provision in the will that provides the Trustee is "to divide the proceeds [from selling the real property] equally between Dallas, Jerry and Doug after all expenses, taxes and liens of any kind and nature against the Trust property is paid." The district court found that the 2007 loan was obtained solely for Jerry's benefit and that it should be paid from his share of the sale proceeds.

Jerry does not challenge on appeal the district court's conclusion that the loan was obtained solely for his benefit. He was farming the real property as a lessee, not as an agent of Trustee. At least since 1999, his farming operation had not been profitable, and he had borrowed increasing sums of money to keep farming. The district court found that the two loans obtained from Ireland Bank in 2002 "restructured the individual debt of Jerry Beus" and that the 2007 loan proceeds "paid off the Ireland bank loans, which were personal loans of Jerry Beus" and paid him $18,153.84. The court concluded, "After reviewing the uses of the [2007] loan, the Court finds the purpose of the loan to be for the sole benefit of Jerry."

"[I]t is the intention of the testator which must be given effect when a reviewing court interprets a will. If the language of the document is unambiguous, given its ordinary and well-understood meaning, we will not look beyond the four corners of the will in determining the testator's intent." *Hedrick v. West One Bank, Idaho, N.A.*, 123 Idaho 803, 806, 853 P.2d 548, 551 (1993). "Whether a document is ambiguous is a question of law over which we exercise free review." *Id.*

At the time Decedent executed his will, the real property was subject to a mortgage granted to the Federal Land Bank. On April 11, 1967, he and Widow had executed a mortgage in favor of the Federal Land Bank to pay a loan in the sum of $111,200. The only evidence in the record as to the purpose of that loan is Dallas's deposition testimony that Decedent borrowed the money to purchase his brother's one-half interest in the real property. The loan was paid in full, and the mortgage was released on June 6, 2002.[2] Decedent would have certainly wanted this loan paid in full before the division of any proceeds from the sale of the real property. Neither of his sons incurred the debt secured by the mortgage.

Considering the will as a whole, the district court did not err in holding that it was not Decedent's intent that one beneficiary should be able to incur a debt for his sole benefit and then have the other two beneficiaries pay two-thirds of that debt upon the sale of the real property. The will included the following provision:

> No beneficiary under any Trust created under this Will shall have the power to pledge, assign, mortgage, sell or in any manner transfer or hypothecate any interest which such beneficiary may have or may expect to have in any income or principal; nor shall such interest of any beneficiary be liable or subject in any manner while in the possession of the Personal Representative or Trustee, respectively, for the debts, contracts, liabilities, engagements, obligations or torts of such beneficiary, save and except that with the consent of the Trustee, whoever operates the farm may jointly, with the Trustee, borrow such money as is necessary to finance the operation of the farm, providing the farming is done in a good and workmanlike manner.

The above provision states, "No beneficiary . . . shall have the power to pledge, assign, mortgage, sell or in any manner transfer or hypothecate any interest which such beneficiary may have or may expect to have in any income or principal . . . ." Under the first clause, no beneficiary has the right to mortgage the interest he expects to receive in the trust property.

The provision then states, "[N]or shall such interest of any beneficiary be liable . . . for the debts . . . of such beneficiary, save and except that with the consent of the Trustee, whoever operates the farm may jointly, with the Trustee, borrow such money as is necessary to finance the operation of the farm . . . ." Under this clause, the interest of any beneficiary is not liable for the debts of *such beneficiary*, except "whoever operates the farm may jointly, with the Trustee,

---

[2] The promissory note secured by the mortgage was to be paid at the rate of $7669.90 per year, payable on the first day of January each year, beginning on January 1, 1968. The final payment was due on January 1, 2002.

borrow such money as is necessary to finance the operation of the farm." This clause simply states that the interest in the trust property of the beneficiary who operates the farm can be liable for the debts of that beneficiary. It does not state that the interests of *all beneficiaries* can be liable for the debts incurred by one beneficiary to finance the operation of the farm.

The will indicates that Decedent intended to treat his sons equally. Under the above provision, the interest in the trust property of the son who operated the farm could be liable for debts incurred by that son to do so. There is nothing in the will indicating that he intended to permit the son who operated the farm to spend the inheritances of the other two. The district court did not err in holding that the balance owing on the 2007 farm loan was to be paid from Jerry's share of the sale proceeds.

## V.

### Are Doug and Dallas Entitled to an Award of Attorney Fees on Appeal?

Doug and Dallas request an award of attorney fees on appeal pursuant to Idaho Code section 12-121. Jerry has prevailed on one issue in the appeal. Because his entire appeal was not brought frivolously, unreasonably, or without foundation, they are not entitled to an award of attorney fees under that statute. *Rudd v. Merritt*, 138 Idaho 526, 533, 66 P.3d 230, 237 (2003).

## VI.

### Conclusion

We vacate paragraph 8 of the partial judgment and affirm the remaining parts of the judgment. We remand this case for further proceedings that are consistent with this opinion. Because both sides prevailed in part, we do not award costs on appeal.

Justices BURDICK, J. JONES, HORTON and J. Pro Tem KIDWELL **CONCUR.**

10