# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49572

SUSAN MARIE HOUSTON,

    **Plaintiff-Appellant,**

v.

RYAN ALLEN HOUSTON &
CRYSTAL LEE SIEGLER,

    **Respondents.**

)
)
)
)
)
)
)
)
)
)
)
)
)

**Boise, April 2023 Term**

**Opinion Filed: June 23, 2023**

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Benjamin Harmer, Magistrate Judge. Roger B. Harris, District Judge.

The district court's decision is affirmed.

Parsons Behle & Latimer, Idaho Falls, and Canyon River Law, LLP, Twin Falls, attorneys for Appellant Susan Houston. John E. Cutler argued.

Morris Bower & Haws PLLC, Boise, attorneys for Respondents Ryan Houston and Crystal Siegler. Daniel Bower argued.

---

BEVAN, Chief Justice.

This appeal involves the interpretation of a trust. Robert Houston created a trust which, after amendments, created three separate subtrusts designed to become effective following Robert's death: a "Marital Trust," a "Grandchildren's Trust," and a "Residuary Trust." Within the Residuary Trust, Robert created two FBO[1] trusts, one for each of Robert's children, Patricia and Richard. A clause in the FBO Richard Trust granted Richard a testamentary power of appointment to direct how Richard's share of the Residuary Trust would be distributed if Richard predeceased Robert's then-wife Lyn. The Marital Trust separately provided that if Richard was not alive when the Marital Trust assets were distributed, Richard's portion of the Marital Trust would be placed

---

[1] FBO is an abbreviation for the common term "for the benefit of" and it is often used in estate planning.

1

in a "Grandchildren's Trust" to benefit Richard's two children from his first marriage (Robert and Lyn's grandchildren) Ryan Houston and Crystal Siegler.

This matter was litigated in Richard's probate case after his death. Before the magistrate, Richard's second wife and the personal representative of his estate, Susan Marie Houston, claimed that Richard assigned his interest in Robert's trusts to her in Richard's will. Ryan and Crystal argued that because their father, Richard, had not yet inherited from their grandfather's trusts before he died, Richard could not assign those interests to Susan. The magistrate court agreed with Susan and held that Richard validly assigned his interests to her. Ryan and Crystal, as potential beneficiaries of the Grandchildren's Trust,[2] appealed that decision to the district court, which reversed the magistrate's decision. Susan appeals, arguing that the district court erred by converting the intermediate appeal to a trial de novo and by concluding the magistrate court's interpretation of Robert's Trust was unreasonable. We affirm the decision of the district court.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Given the nature of the parties, we include the following diagram to aid in understanding the parties' relationship to each other and the parties involved in this appeal:



On December 24, 1994, Robert created the Robert Houston Trust (Original Trust). He amended the trust on February 16, 1996 (First Amended Trust) and amended it again on December 17, 1996 (Second Amended Trust). Robert died on April 12, 1999. At the time of his death, Robert

---

[2] Ryan and Crystal are described as "potential beneficiaries of the Grandchildren's Trust" because their grandmother, Lyn Houston, current beneficiary of the Marital Trust and the person Robert created the Marital Trust for, survives Richard. The resolution of this case will determine who receives any remainder in the Marital Trust at Lyn's death.

was survived by his wife, Lyn, who is still alive, by his son, Richard, and by his grandchildren, Richard's children, Crystal, Ryan, and Jonathon.

Robert's Original Trust contains six articles, but relevant to this appeal are three: Article IV–Marital Trust, Article V–Residuary Trust, and Article VI–Grandchildren's Trust. The Marital Trust sets aside a separate trust benefit for Lyn if she survives Robert. The Residuary Trust identifies the distribution of the balance of the trust once all other provisions are complied with *or* if Lyn does not survive Robert. Finally, the Grandchildren's Trust identifies the distribution of assets for each living grandchild. As amended in the Second Amended Trust, Article IV directs that, on Lyn's death, 41.667% of the principal of the Marital Trust be distributed to one of two supplementary subtrusts. Which supplementary trust was funded depended on whether Richard was living at the time of Lyn's death. The principal from the Marital Trust would be deposited either (1) to Richard's FBO trust to benefit Richard according to Article V, as amended, if Richard is then living; or (2) to the Grandchildren's Trust according to Article VI, if Richard is not then living.

On April 18, 2014, fifteen years after Robert's death, Richard created the Richard Allen Houston Trust. That trust was amended on October 22, 2018, the same day Richard drafted his last will and testament. Article VIII of Richard's will stated that Richard intended to exercise "the power of appointment given to me in Article V., Paragraph 2. (d) in the said Second Amendment to the Robert A. Houston Declaration of Trust[.]" If validly executed, the power of appointment would give Richard the ability to assign his share of the trust to Susan. If not validly executed, the share would pass to the Grandchildren's Trust. The next year, on November 12, 2019, Richard died.

Following Richard's death, Susan filed for probate of his estate, and she was appointed as personal representative. Susan then petitioned the magistrate court to determine the validity of the power of appointment in Richard's will. Crystal and Ryan objected to Susan's petition. The magistrate court heard oral arguments and issued an oral ruling, followed by a written judgment, concluding that the power of appointment in Richard's last will and testament was valid. The magistrate also held that the trustees of Robert's trust had to honor Richard's power of appointment as to *both* the Marital Trust and Richard's FBO trust, requiring the co-trustee of Robert's estate to distribute 41.667% of the assets remaining in the Marital Trust following Lyn's death to Richard's estate. Crystal and Ryan appealed this part of the magistrate court's decision to the district court.

3

On intermediate appeal, the district court entered a procedural order informing the parties that the appeal would proceed on the record rather than as a trial de novo. *See* I.R.C.P. 83(f)(1) and (r). After briefing, the parties did not request oral argument, and the district court subsequently issued its memorandum decision. In that decision, the district court included what it called "findings of fact" based on the record before it. The district court ultimately concluded that the Trust was unambiguous, and that the magistrate court erred in ruling otherwise. Based on the clear intent of the Trust as a whole, the district court found that the power of appointment in Richard's will *was* a valid assignment of Richard's interest in Richard's FBO trust, but that it had no bearing on the assets in the Marital Trust. The district court noted that those assets have yet to be distributed since Lyn is still alive and Richard's power of appointment had not vested at the time of his death. Thus, the testamentary power of appointment did not apply to the future assets of the Marital Trust. Susan timely appealed to this Court.

## II. STANDARDS OF REVIEW

When this Court reviews the decision of a district court sitting in its appellate court capacity,

> [t]he Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Nelson v. Evans*, 166 Idaho 815, 819, 464 P3d 301, 305 (2020) (citing *Bailey v. Bailey*, 153 Idaho 526, 52, 284 P.3d 970, 973 (2012)). Importantly, "this Court does not review the decision of the magistrate court[,]…[r]ather, we are 'procedurally bound to affirm or reverse the decisions of the district court.'" *Matter of Est. of Hirning*, 167 Idaho 669, 675, 475 P.3d 1191, 1197 (2020) (alterations original) (quoting *Pelayo v. Pelayo*, 154 Idaho 855, 859, 303 P.3d 214, 218 (2013)).

"When reviewing a trust, this Court must determine a settlor's intent." *Est. of Davis*, 167 Idaho 229, 232, 469 P.3d 16, 19 (2020) (citing *Carl H. Christensen Fam. Tr. v. Christensen*, 133 Idaho 866, 873, 993 P.2d 1197, 1204 (1999)). "We construe a trust instrument as a whole, considering all parts in light of the entire instrument." *Id*. "The Court's primary objective is to discover the intent of the parties through viewing the document in its entirety. When a document is clear and unambiguous, interpretation of its meaning is a question of law." *Id.* at 232–33, 469 P.3d at 19–20.

4

Susan raises two issues on appeal: (1) whether the district court erred on intermediate appeal by allegedly conducting a trial de novo without advising the parties, and (2) whether the district court erred in determining that Robert's trust was unambiguous. We affirm the district court's decision that the Trust was unambiguous. We also hold that the district court reached the proper result in this appeal, even though it erroneously used the term findings of fact in its opinion.

**A.      Notwithstanding language in the district court's decision, the district court did not conduct a trial de novo.**

Before we consider whether the Trust is ambiguous, we address the standard of review that the district court applied to the intermediate appeal of the magistrate court's decision. Susan argues that the district court improperly conducted a "trial de novo" on intermediate appeal, even though that court had issued a procedural order governing the appeal which provided that "[p]ursuant to I.R.C.P. 83(f)(1) this matter will proceed as an appeal on the record rather than as a trial de novo." Crystal and Ryan maintain that the district court merely exercised free review over the legal question of whether the trust was ambiguous and then applied the trust's plain meaning to interpret it.

When a district court hears an appeal from the magistrate court, the district court has the option of: "(1) conducting an appellate review of the magistrate court's decision just as the appellate courts would conduct a review of a district court; or (2) wiping the slate clean by ordering a trial de novo[.]" *Leavitt v. Leavitt*, 142 Idaho 664, 669, 132 P.3d 421, 426 (2006) (citing *Winn v. Winn*, 101 Idaho 270, 272, 611 P.2d 1055, 1057 (1980)). "Upon an appeal from the magistrate[']s division of the district court involving a trial de novo, the district court shall render a decision in the action as a trial court as though the matter was initially brought in the district court." *Id.* (brackets in original) (quoting I.R.C.P. 83(u)(2)). "Trial de novo, this Court has explained, means 'a trying of the matter anew—the same as if it had never been heard before.'" *Id.* (quoting *Gilbert v. Moore*, 108 Idaho 165, 168, 697 P.2d 1179, 1182 (1985)).

The district court here considered the case entirely from the record before it and reached its decision on that record. The district court did not conduct a *trial* de novo—it engaged in a de novo *review* of the magistrate court's decision. And de novo review was the proper appellate standard of review applicable to the case before the district court—determining whether Robert's trust is ambiguous.

This Court has repeatedly held that whether a document is ambiguous is a "question of law over which we exercise *free review*." *Hedrick v. W. One Bank, Idaho, N.A.*, 123 Idaho 803, 806, 853 P.2d 548, 551 (1993) (emphasis added); *see also Eagle Springs Homeowners Ass'n, Inc. v. Rodina*, 165 Idaho 862, 870, 454 P.3d 504, 512 (2019) (we apply de novo review to the plain meaning of unambiguous documents). Thus, de novo review is the proper legal standard of review to apply when determining whether a document is ambiguous.

That said, we recognize that the district court's opinion can be confusing. The district court first stated it "must review the issues presented in a *de novo* manner . . . ." But it later stated that because it "was reviewing th[e] matter de novo," it would "make its own finding of facts based upon the information contained in the record and what was presented to the [m]agistrate [c]ourt during the . . . hearing on Susan's petition." This latter statement is flawed. Appellate courts do not make findings when reviewing matters on the record. The rule of civil procedure governing these appeals makes this clear: "[t]he district court must review the case on the record and determine the appeal in the same manner and on the same standards of review as an appeal from the district court to the Supreme Court under the statutes and law of this state, and the Idaho Appellate Rules." I.R.C.P. 83(f)(1).

Susan takes the district court's latter statement to mean that the court converted this matter to a *trial* de novo and weighed credibility of witnesses. The district court's statements caused Susan to conclude that the district court did an about-face by telling the litigants one thing in its procedural order, but then doing another.

Viewing the district court's opinion as a whole, we conclude that any error in the district court's inartful statements was harmless. First, the district court's opinion reached its initial legal conclusion on the lack of ambiguity in the Trust *before* venturing into the later section of its opinion categorized as "Findings of Fact/Background." Its initial legal conclusion was correctly stated in the heading in the prior section of the district court's opinion: "**The Robert Houston Trust is Not Ambiguous**." (Bold in original). As we discuss below, this was the correct *legal* conclusion, and it was not based on any factual findings; it was based on a facial review of the Trust itself. Second, nothing in the so-called "Findings of Fact/Background" was used by the district court in (1) concluding the Trust was unambiguous and (2) applying a plain reading of the trust's terms to the issue before the district court. "At every stage of the proceeding, [this Court] must disregard all errors and defects that do not affect any party's substantial rights." *Frizzell v.*

6

*DeYoung*, 167 Idaho 801, 806, 477 P.3d 236, 241 (2020) (quoting I.R.C.P. 61). Nothing in the district court's reference to making its own findings affected the outcome of the appeal, nor did the court's statements affect Susan's substantial rights. Thus, we disregard the district court's erroneous reference to making findings.

Finally, we conclude that the district court's use of the term "findings of fact," while inartful, was not an accurate description of what it was doing. The facts listed in that section of its opinion are much like the "Statement of Facts" contained in nearly every appellate opinion. Those facts are typically undisputed (unless noted otherwise) and taken *from the record*. When no trial de novo occurs, such statements are gleaned from declarations or testimony in the record, with no *weighing* of facts or evidence to reach conclusions. The "findings" listed in the district court's opinion were simply a recitation of the uncontradicted facts in the record. Thus, the district court did not convert the case into a de novo trial or make independent factual findings from a "new trial." No witnesses were called; no testimony was given or received. The district court examined the existing record before it, and it reached a legal conclusion from those facts. Accordingly, we hold that the district court did not conduct a trial de novo, and even if it erred in labelling a section of its opinion "Findings of Fact/Background," the error was harmless.

**B. The district court did not err in reversing the magistrate's decision that Robert's trust was ambiguous.**

We now turn to the merits of Susan's claim, in which Susan argues that the district court erred in concluding that Robert's trust was unambiguous. Crystal and Ryan maintain that, applying a free review standard, the district court properly determined the trust was unambiguous. For the reasons stated below, we agree with Crystal and Ryan.

"In determining whether a document is ambiguous, the Court seeks to determine whether it is 'reasonably subject to conflicting interpretation.'" *Carl H. Christensen Fam. Tr. v. Christensen*, 133 Idaho 866, 873, 993 P.2d 1197, 1204 (1999) (quoting *Bondy v. Levy*, 121 Idaho 993, 997, 829 P.2d 1342, 1346 (1992)). "Ambiguity exists *only* if language of the conveyance instrument is subject to conflicting interpretations." *Neider v. Shaw*, 138 Idaho 503, 508, 65 P.3d 525, 530 (2003) (emphasis added).

The key to resolving this question begins and ends with the plain language of Article IV of the Amended Trust. This language specifies what happens to Richard's portion of the Marital Trust once Lyn dies:

> I give 41.667% of the Marital Trust estate to the Trustees hereinafter named for the benefit of my son, Richard, such trust to be administered as provided for in Article V below.
>
> If he is not then living, then his share of the Marital Trust shall be given to the Trustees of the Grandchildren's Trust to be held by them and administered as provided for in Article VI below.

This language has nothing to do with the Trust as a whole, nor does it apply to the FBO Richard Trust that is passed down in Article V. Instead, this language plainly provides that 41.667 percent of the *Marital Trust* will be given to "the Trustees hereinafter named for the benefit of my son, Richard, . . ." *after* Lyn's death. The rest of the sentence references Article V as it pertains to administration of the *Marital Trust* if Richard were alive upon Lyn's death. That language does not convert Article V's testamentary appointment provision into a right of testamentary appointment for the Marital Trust, as the magistrate court incorrectly ruled. Rather, the words in Article V govern the Marital Trust, and those words explicitly state, "If [Richard] is not then living [at Lyn's death], then [Richard's] share [of the Marital Trust] shall be given to the Trustees of the Grandchildren's Trust . . . ." These directives are not vague or unclear about Robert's intention regarding the Marital Trust—they require that Richard outlive Lyn in order to receive the proceeds of the Marital Trust—and to have the power of appointment to convey the assets of the Marital Trust. Thus, the district court was correct to overrule the magistrate court's conclusion that held otherwise.

Susan maintains that an ambiguity arises when one looks at how Robert's choice of language changed from the Original Trust to the Second Amended Trust. But this argument misapprehends how courts determine ambiguity. Indeed, this argument asks the Court to look outside the four corners of the testamentary document and examine extrinsic evidence—the Original Trust. Susan mistakenly relies on language from Robert's Original Trust, particularly references in that document to Richard being "living," to underpin her premise that the Second Amended Trust is ambiguous. But as we have pointed out, that is not how the legal analysis is conducted in these cases. "In construing a written instrument[,] this Court must consider it as a whole and give meaning to all the provisions of the writing to the extent possible." *Magic Valley Radiology Associates, P.A. v. Prof'l Bus. Services, Inc.*, 119 Idaho 558, 565, 808 P.2d 1303, 1310 (1991).

That Robert referenced Richard being "living" in two places in the Original Trust is of no moment. The clauses Susan now seeks to revisit were deleted and replaced with the new language quoted above. No legal authority supports Susan's position that when a testator deletes entire provisions of a trust and replaces those provisions with clear and unambiguous language, the courts will examine the original language to determine whether the *new* language is ambiguous. Again, we apply de novo review to the plain meaning of unambiguous documents. *See Eagle Springs Homeowners Ass'n*, 165 Idaho at 870, 454 P.3d at 512. And if unambiguous, we do not look beyond the four corners of such documents to aid our review:

> If the terms of the contract are unambiguous, intent can be ascertained as a matter of law by looking to the four corners of the document. Subjective, undisclosed intent is immaterial to a contract's interpretation. . . . Rather, the court gives force and effect to the words of the contract without regard to what the parties to the contract thought it meant or what they actually intended for it to mean.

*Stanger v. Walker Land & Cattle, LLC*, 169 Idaho 566, 573, 498 P.3d 1195, 1202 (2021) (internal citations and quotations omitted). Accordingly, intent as expressed in prior iterations of an amended document is irrelevant when that document is plain and unambiguous.

Subsection (f)(2) provides that Richard must *be living* at the time of Lyn's death to receive the assets from the Marital Trust. And the point at which Richard must be living is qualified by the time at which the Marital Trust vests: "If he is not *then* living, then his share of the Marital Trust shall be given to the Trustees of the Grandchildren's Trust. . . ." (Emphasis added). The "then" referred to is Lyn's death, which has yet to occur; when it does occur, Richard's share of the Marital Trust will pass to the Grandchildren's Trust since he will not be "then living." As a result, we hold that the district court properly concluded that any remainder in the Marital Trust after Lyn's death will transfer to the Grandchildren's Trust, not to Richard's estate.

Susan next challenges the district court's conclusion as it relates to Article V, arguing that Article V controls over the language in Articles IV and VI. Susan contends that the magistrate court's interpretation was reasonable. We disagree and note that under the proper standard of review, the question here is not whether the magistrate's conclusion was reasonable, but whether its decision that the Trust was ambiguous is legally sound. Article V(2)(d) (pertaining to the FBO Richard Trust) states:

> 2. Trusts for the Benefit of Patricia and Richard. Each trust share set-aside [sic] for a living child of mine shall be held as a separate trust and disposed of as provided for below:

. . .

> (d) If a child dies before receiving his or her trust in full, then upon the child's death his or her trust shall be held in trust hereunder or distributed to or in trust for such appointee or appointees, with such powers and in such manner and proportions as the child may appoint by his or her will making specific reference to this power of appointment.

Susan asks us to read Article IV and Article V together, pointing to conditional phrasing in both that parallels one another. She argues that this provides textual evidence that the Second Amendment intended to give Richard the power to appoint, through his will, the *full* share of trust assets—including the 41.667% interest in the Marital Trust—on Lyn's death.

The plain language of the Second Amended Trust does not support Susan's argument, nor does the plain language require us to interpret the terms in each subtrust as one combined article. Article IV and Article V address separate assets, and separate subtrusts. From the plain language of each article, Robert intended those articles to have different legal effects. If we were to interpret Article IV to be read as one and the same as Article V, as Susan proposes, then Article IV's provisions would be rendered superfluous. *See Steel Farms, Inc. v. Croft & Reed, Inc.*, 154 Idaho 259, 266, 297 P.3d 222, 229 (2012) (explaining that when an interpretation fails to give effect to each part of a provision, it renders the remaining provisions superfluous).

To support her position, Susan claims that the textual evidence in the Second Amended Trust parallels this Court's decision in *Rutter v. McLaughlin*, 101 Idaho 292, 612 P.2d 135 (1980). In *Rutter*, the Court affirmed a district court's factual finding on intent when the district court found a contract to be ambiguous. *Id.* at 293, 612 P.2d at 136. But Susan's reliance on *Rutter* is misplaced. First, part of the record which allegedly supported Rutter's position was unavailable on appeal. Thus, the Court held that "[e]rror will not be presumed on appeal but must be affirmatively shown on the record by appellant." *Id.* We don't have that issue here. The language from both the Original and the Second Amended Trust are found in multiple places in the record. Second, based on the ambiguous nature of the contract, *Rutter* included a finding made by the trial court about the intent of the parties in creating the contract. We are not required to determine intent when the meaning of a document is plain and unambiguous, despite the magistrate court's finding to the contrary. Thus, *Rutter* affords Susan no help in this appeal. The question here is not one of fact, but one of law: whether an ambiguity is present in Robert's trust. As we have held, the answer to that question is no. At the risk of redundancy, we repeat: absent ambiguity, we construe the text

10

according to the plain meaning of the trust. *Buku Properties, LLC v. Clark*, 153 Idaho 828, 832, 291 P.3d 1027 1031 (2012) (*quoting C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001)).

Susan's argument that Robert intended for the distribution to the Grandchildren's Trust to be available as a backup plan only if Richard did not exercise his power of appointment is contradicted by the plain language of the trust. Article IV of Robert's trust provides that at the time of Lyn's death, "[i]f he [Richard] is not then living, then his share of the Marital Trust shall be given to the Trustees to the Grandchildren's Trust to be held by them and administered as provided for Article VI below." This language states that Richard must be living to take his share of the Marital Trust—if not, his share transfers to the Trustees of the Grandchildren. The magistrate court's decision to the contrary was unsupported by the record. As a result, we affirm the district court's decision reversing the magistrate court's decision.

## IV. CONCLUSION

For these reasons, the district court's judgment is affirmed. Costs are awarded to Crystal and Ryan as the prevailing parties under I.A.R. 40(a).

Justices BRODY, STEGNER, MOELLER, and ZAHN CONCUR

11