IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 50610

| | |
|---|---|
| In the Matter of the Estate of: Fay C. Harris, Decedent. | ) ) |
| TRENTON FAY HARRIS, Personal Representative for the Estate of Fay C. Harris, Decedent, | ) ) ) |
| | ) |
| Petitioner-Respondent, | ) |
| | ) |
| v. | ) ) |
| | ) |
| MARTHA JEAN DUMONT, | ) ) |
| | ) |
| Respondent-Appellant. | ) ) |

Filed: March 15, 2024

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge. Hon. Cleve Colson, Magistrate.

Appeal from decision of the district court, on intermediate appeal from the magistrate court, affirming order construing will, reversed; case remanded.

Wright Law Office, PLLC; Steven J. Wright; Beard, St. Clair, Gaffney PA; John M. Avondet, Idaho Falls, for appellant. John M. Avondet argued.

Carey Law, PLLC; Donald F. Carey, Idaho Falls, for respondent. Donald F. Carey argued.

---

HUSKEY, Judge

Martha Jean Dumont appeals from the district court's decision and order on appeal affirming the magistrate court's order construing the will of Fay C. Harris (Fay). Dumont argues the district court erred by looking beyond the contested provision to determine Fay's intent despite finding the language was clear and unambiguous. Dumont also argues the district court erred by deciding an issue not raised in the pleadings. Trenton Fay Harris (Trenton), the Personal Representative of the Estate, argues the district court correctly considered the language within the four corners of the will, reading the document as a whole, to determine Fay's intent. Trenton also

argues that Dumont failed to preserve her claim that the district court erroneously decided an unpled issue for appeal. For the following reasons, we reverse the district court's order on appeal and remand for further proceedings.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Fay and Dumont lived together for some years prior to Fay's death. Fay died in October 2021, and Trenton filed for informal probate of Fay's will. A dispute arose regarding Article VI, Section B in the will and how some of Fay's personal property was to be distributed. Trenton filed a petition for an order construing a single, disputed provision of the informally probated will. The disputed provision, Article VI, Section B of the will states:

> I declare that my special friend, MARTHA JEAN DUMONT and I have accumulated personal property together. I give all personal property in which I may have an interest which is located in the residence of MARTHA JEAN DUMONT at the time of my passing to MARTHA JEAN DUMONT, free of any claim by my Personal Representative or my heirs or devisees.

The magistrate court held the language was not ambiguous, and Fay's inferred intent was for the jointly accumulated personal property located at Dumont's residence to be devised to Dumont. The magistrate court reached this conclusion by comparing the language of Article IV, which addressed joint bank accounts, to the language of Article VI. Article IV of the will states:

> I declare that my special friend, MARTHA JEAN DUMONT and I have a joint checking account. It is my intent and direction that any balance in said account shall be considered to be the property of MARTHA JEAN DUMONT. To the extent I have any interest in said account, it is my direction that my Personal Representative deliver the entire balance in the account to MARTHA JEAN DUMONT.

The magistrate court held that because both articles began in a similar manner by identifying Dumont as a special friend, and Article IV explicitly granted only the joint property to Dumont, Article VI should be interpreted the same way, and Dumont should receive only the jointly accumulated personal property. In addition, although not raised by either party and for which there was no briefing or argument, the magistrate court also addressed the joint bank accounts in Article IV in its conclusions of law, stating the separate accounts of Fay should remain with the estate. Dumont appealed the order to the district court. First, Dumont argued the magistrate court erred in its interpretation of the plain language of the will. Second, Dumont argued that any ruling regarding the bank accounts was outside the scope of the petition and

2

because she had no opportunity to address the distribution of proceeds of the bank accounts, the magistrate court erroneously decided the issue.

The district court held the language of the will as a whole "colors and informs" the individual clauses and because the language of Article IV nearly mirrored the language in Article VI, the magistrate court correctly interpreted the first sentence of Article VI as limiting the devise of personal property in the second sentence to jointly acquired property. The district court held Dumont failed to preserve the issue of the magistrate court deciding an unpled issue because she did not receive an adverse ruling from the magistrate court, and therefore the issue would not be considered. Dumont timely appealed.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id*. Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

## III.

## ANALYSIS

On appeal, Dumont asserts two arguments: (1) the district court erred by inferring the intent on the disputed provision based on another provision of the will when the language was unambiguous; and (2) the district court erred in finding Dumont failed to preserve her argument regarding the bank account ruling. Trenton agrees the language of the disputed provision is clear and unambiguous, but argues the district court correctly looked within the four corners of the will to determine Fay's intent. He concedes that although the magistrate court erred in addressing issues not within the petition, the district court correctly determined Dumont failed to preserve her claim when she failed to raise the issue before the magistrate court.

3

**A.** **The District Court Erred in Its Interpretation of Article VI, Section B of the Will**

Dumont asserts the district court erred in affirming the magistrate court's decision to define "all property" in Article VI, Section B as "jointly acquired property" based on the language of Article IV. In doing so, Dumont argues, the district court ignored the plain language of Article VI, Section B and failed to adhere to the standards of construction. Dumont asserts the language of Article VI is clear and, thus, there is no need to look to any other provisions or language of the will to determine Fay's intent. The plain language of the provision states Dumont is to receive all property at the residence in which Fay had an interest, not just jointly accumulated property. Trenton contends the district court correctly interpreted the will by finding it was not ambiguous and by determining Fay's intent by looking within the four corners of the document. Trenton asserts the first sentence of Article VI, Section B limits the legal devise of the second sentence to only the jointly acquired property, just as Article IV limited the distribution of bank accounts to only the jointly held account.

When interpreting a will, the intention of the testator must be given effect. *Allen v. Shea*, 105 Idaho 31, 32, 665 P.2d 1041, 1042 (1983). "The judicial function is to give effect to the lawful testamentary intent as evidenced by the will, and to eschew speculation as to the testator's undeclared motives or purposes." *Matter of Estate of Howard*, 112 Idaho 306, 309, 732 P.2d 275, 278 (1987). If the language of the will is clear and unambiguous, the intentions of the testator are reflected in the document itself. *Matter of Estate of Berriochoa*, 108 Idaho 474, 475, 700 P.2d 96, 97 (Ct. App. 1985). Whether the document is ambiguous is a question of law. *Hedrick v. West One Bank, Idaho, N.A.*, 123 Idaho 803, 806, 853 P.2d 548, 551 (1993). "Ambiguity exists only if language of the conveyance instrument is subject to conflicting interpretations." *Houston v. Houston*, 172 Idaho 264, 271, 531 P.3d 1161, 1168 (2023) (quoting *Neider v. Shaw*, 138 Idaho 503, 508, 65 P.3d 525, 530 (2003)).

The dispute revolves around the first two sentences of Article VI of Fay's will, which states:

> I declare that my special friend, MARTHA JEAN DUMONT and I have accumulated personal property together. I give all personal property in which I may have an interest which is located in the residence of MARTHA JEAN DUMONT at the time of my passing to MARTHA JEAN DUMONT, free of any claim by my Personal Representative or my heirs or devisees.

The question to resolve is whether the first sentence of the article limits the distribution given in the second sentence. Because the parties agree the language is not ambiguous, they also agree the

4

intentions of the testator are set forth in the provision. A court "cannot speculate as to what the testatrix intended to declare in the will, except as that intent is expressed by the words actually used therein." *Dolan v. Johnson*, 95 Idaho 385, 389, 509 P.2d 1306, 1310 (1973). Whether we look solely at the language of Article VI or the language contained in the four corners of the will, the result is the same. The first sentence in each article does not have language indicating or conveying intent; instead, the first sentence of each article is a factual statement indicating the relationship between Fay and Dumont and provides context for the bequests in the respective articles. The second sentence of each article reflects the intention of Fay regarding his personal property.

The second sentence of Article VI states that "all" personal property in the residence is to go to Dumont. The plain meaning of "all" is "the whole amount, quantity, or extent of" and "the whole of one's possessions, resources, or energy." *All*, Webster's Dictionary, https://www.merriam-webster.com/dictionary/all (last visited Jan. 23, 2024). Thus, the plain meaning of the sentence is that the entirety of Fay's personal property located in Dumont's residence should be given to Dumont. The only limiting element in the sentence is based on the location of the property: the property to be distributed is limited to the personal property in the residence. Because the second sentence is clear and unambiguous, and it does not contain language incorporating the first sentence, we do not need to look to the four corners of the document to determine Fay's intent. Fay's intent is expressed in the plain language of the second sentence.

But even if we look at the will as a whole, we conclude that Fay specifically intended different distributions for the property referenced in the respective articles. In Article IV, for example, the first sentence references a jointly owned bank account. Fay's intent is expressed in the second sentence where he limits the bequest to "said account," clearly referencing the jointly owned account. In Article IV of the will, Fay devised the joint bank account with explicit language, stating:

> It is my intent and direction that any balance in said account shall be considered to be the property of MARTHA JEAN DUMONT. To the extent I have any interest in said account, it is my direction that my Personal Representative deliver the entire balance in the account to MARTHA JEAN DUMONT.

Fay further went on to state:

> I declare that I may hold other savings accounts, checking accounts or other accounts in a joint name with a person other than MARTHA JEAN DUMONT. It is my intention in doing so for convenience only, and I nevertheless state that it is

5

my intention that said property shall remain in my Estate and shall be disposed of pursuant to this my last will and testament.

The language of Article IV, by using limitations such as "said accounts," demonstrates that Fay understood how to identify and limit a devise. In Article IV, Fay clearly stated his intentions regarding distributing assets that were jointly accumulated between himself and Dumont.

In contrast, the second sentence in Article VI does not reference the first sentence and as a result, does not limit the bequest to the jointly accumulated personal property. In Article VI, Fay did not limit the devise of personal property as he did in Article IV, even after demonstrating his knowledge of how to effectively do so. In Article VI, Fay explicitly chose to use the word "all" to describe the property conveyed. Therefore, the language and, by extension, the intent of Fay, indicates a desire to devise all his personal property at the residence of Dumont to Dumont.

Trenton argues that this interpretation renders the first sentence of each article meaningless. In other words, argues Trenton, there would be no reason to include such a statement in Article VI if Fay meant to give all the property located at the residence to Dumont. We disagree. As discussed above, the language in the first sentence provides notice or context as to why Fay made the distributions--because he wanted to give certain assets to his "special friend," Dumont. Moreover, despite that similar language in the first sentence of each article, Fay chose different language to devise different assets. The language in the first sentence does not alter or inform the explicit language regarding the distribution of the relevant asset identified in the second sentence of each article. We note there may be practical reasons for devising the different property differently. Indeed, as discussed at oral argument, going through the property in the home and determining which was joint and which was separate may very well have been precisely what Fay wished to avoid. However, we need not speculate as to why Fay included the first sentence or why he chose to devise different assets differently. "The judicial function is to give effect to the lawful testamentary intent as evidenced by the will, and to eschew speculation as to the testator's undeclared motives or purposes." *Howard*, 112 Idaho at 309, 732 P.2d at 278. Here, Fay's explicit and specific language in each article expressed his intent to devise different property differently.

Trenton argues that despite the plain language regarding "all" the personal property, Fay could not have intended that because it would vitiate Article VI, Section C, which states:

> I give my property not disposed of under the provisions of paragraph A and B of this Article IX to my children who survive me, to be divided among them as they shall agree, or in the absence of such agreement, as my Personal

> Representative shall determine, which determination shall be conclusive. No anti-lapse statute shall apply.

However, to the extent the testator had assets not located at the residence, those assets would still be distributed pursuant to Section C. Section C is not superfluous and does not vitiate the interpretation that all property, jointly acquired or otherwise, located at Dumont's residence would go to Dumont, but other property not located at Dumont's residence would be distributed to his estate.

Both parties cite *Beus v. Beus*, 151 Idaho 235, 254 P.3d 1231, 1250 (2011) for guidance but have conflicting views of its applicability to the case. In the case before us, *Beus* is neither controlling nor persuasive for our analysis because unlike the provisions in *Beus*, the provisions in Fay's will do not conflict in their application. In *Beus*, the decedent's will left his widow certain real property and bequeathed the remainder of his property to a trustee in trust. *Id.* at 237, 254 P.3d at 1233. The will provided that upon the death of the widow, the trust terminated, and the remaining assets subject to the trust were to be distributed equally among the decedent's three sons. *Id.* If the sons could not agree upon the operation, management, and division of the real property, the trustee was to sell the property and divide the proceeds equally among the sons, after payment of all expenses, taxes, and liens against the property. *Id.* One son farmed the land and secured a loan using the farm as collateral, but without the consent of his brothers. *Id.* The issue was whether the son who incurred the debt could use the estate to pay the debt prior to distributing the remainder, essentially forcing the other brothers to share in the debt liability.

The provision directing proceeds from the sale to be divided equally after payment of debts directly conflicted with another provision in the will that clarified the beneficiary who operates the farm is liable for his own debts. *Id.* at 241-42, 254 P.3d at 1237-38. The Court held "[t]here is nothing in the will indicating that [the testator] intended to permit the son who operated the farm to spend the inheritances of the other two." *Id.* at 242, 254 P.3d at 1238. The Court considered the will as a whole to determine the decedent's intent. *Id.* at 241, 254 P.3d at 1237.

The guidance of *Beus* is minimally instructive for interpreting Fay's will. When viewing Fay's will as a whole, the articles do not conflict in application because each article is capable of being executed without an effect on the other article. Thus, the district court erred in affirming the magistrate court's interpretation by looking to Article IV to determine Fay's intent when Article VI was unambiguous.

7

**B.      The District Court Erred in Determining Dumont's Unpled Claim Issue Is Not Preserved**

Dumont appeals the district court's decision affirming the magistrate court's order based on her failure to preserve the issue for appeal.  The issue is based on the magistrate court's order and decision addressing Fay's separate bank accounts even though the accounts were not a part of the petition or listed inventory to be considered, nor was the ownership or distribution of the accounts briefed or argued.  Dumont argues that without an opportunity to address the distribution of the bank accounts during the hearing, the magistrate court erred, and the district court misunderstood the origin of the magistrate court's order regarding the separate accounts.  Trenton concedes the magistrate court's order exceeded the considerations of the petition but argues Dumont failed to object or otherwise seek review of the order and, therefore, Dumont failed to preserve the issue for appeal.

Here, the magistrate court explicitly referenced the separate bank accounts in the conclusions of law despite having no discussion or argument about the accounts during trial.  As the district court noted in its findings:

> Nothing in the Record mentions any dispute between [Dumont] and Trenton regarding the accounts referenced in Article IV of Fay's Will, or that Article IV would be a point of contention at the June 15 Hearing.  Neither party briefed any issue regarding the language of Article IV (other than Trenton's citation to Article IV in support of his interpretation of Article VI.B).

Courts are "not authorized to grant relief that is inconsistent with the pleadings and evidence in the case."  *Dawson v. Cheyovich Fam. Tr.*, 149 Idaho 375, 381, 234 P.3d 699, 705 (2010).  Here, although neither party raised the issue of the distribution of bank accounts, the magistrate court nonetheless issued a ruling without any opportunity for the parties to brief or argue the issue.  While it is not error for a court to sua sponte rule on an issue if it provides the parties notice and opportunity to brief the issue, *Papin v. Papin*, 166 Idaho 9, 20, 454 P.3d 1092, 1103 (2019), it is an error to do so without providing that opportunity.  Here, the magistrate court provided neither notice nor an opportunity to address the issue before it issued its Findings of Fact/ Conclusions of Law.  The district court ruled Dumont failed to properly preserve the issue and affirmed the magistrate court's finding that the bank accounts reverted to the estate, even without any evidence about those accounts, residual beneficiaries, or any interest Dumont may have in the accounts.  Because the magistrate court ruled on an issue for which it provided neither notice nor

8

an opportunity to brief the issue, it exceeded the bounds of the issue it was presented, and the district court erred in affirming the magistrate court's decision.

## IV.

## CONCLUSION

The language of Fay's will is unambiguous and devises all Fay's personal property located in Dumont's residence at the time of his death to Dumont. Additionally, Dumont preserved her unpled claim for appeal. Accordingly, we reverse the district court's decision and order on appeal affirming the magistrate court's order construing the will of Fay C. Harris, and remand for further proceedings consistent with this opinion.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.